**Garry Lynard THOMAS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 109–91.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 28, 1992.

Gary A. Udashen (on appeal only), Dallas, for appellant.

John Vance, Dist. Atty. and Anne B. Wetherholt, Suzanne Lomenick and Dennis James, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

A jury convicted appellant and his co-defendant, Ricky James Davis, of murder pursuant to Tex.Penal Code Ann. § 19.-02(a)(1). The trial judge assessed appellant's punishment at confinement for life. Tex.Penal Code Ann. § 12.42(c). The Court of Appeals affirmed. *Davis and Thomas v. State*, Nos. 05–89–00496–CR and 05–89–00497–CR, Delivered October 31, 1990 (Tex. App.—Dallas 1990) (not published). We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in not ordering a new trial when the State failed to disclose exculpatory evidence in violation of the Due Process

Clauses of the Fourteenth Amendment and Art. I, § 19 of the Texas Constitution.[1]

## I.

Appellant, Davis, Charles Sims and James Walker arrived at Jeannie Sims' apartment. Some time later, the deceased arrived with Denise Crowder. At trial, Jeannie Sims, the deceased's former girlfriend, and Crowder, the deceased's fiancee, each testified they saw appellant drag the deceased behind the apartment building and shoot him. Police officers interviewed Walker several days after the alleged offense. Approximately one month later, Walker was interviewed by Dallas County Assistant District Attorney, Suzanne Lomenick, and her investigator, Yolanda Moses. On the first day of the trial, Lomenick and Walker met in the courtroom and again discussed the case.

Prior to trial, Davis filed a motion for the disclosure of favorable evidence. At the hearing on the motion the trial judge asked Lomenick if she had any evidence favorable to either appellant or Davis. Lomenick denied having any favorable evidence.[2] At trial, the State relied exclusively on the testimony of Jeannie Sims and Crowder to implicate appellant in the murder.[3] Walker did not testify at either phase of appellant's trial. Appellant filed a motion for new trial, in part, contending:

> ... Exculpatory evidence tending to establish the innocence of the accused has been intentionally withheld or not revealed by the prosecutor or his agents prior to trial. This evidence is the exculpatory evidence that could be provided by James Walker.

At the hearing on appellant's motion for new trial, Walker testified that appellant was in the front yard of the apartment building when Walker went upstairs to watch a movie. While upstairs Walker heard loud voices but could not tell who was arguing. Walker then heard shots from behind the apartment building. Walker fell to the floor, got up and "within a matter of ... five seconds" ran downstairs. When Walker reached the front porch of the apartment, he saw appellant standing in the front yard. Walker and Charles Sims ran behind the apartment building where they saw Davis standing next to the deceased. Davis pointed a gun at Walker and Charles Sims, who ran back inside the apartment. Walker stated appellant could not have moved from the back of the apartment building to the front yard within the few seconds it took Walker to run downstairs and outside the apartment building.

It is undisputed that Walker told this version of the events to police officers once, and to Lomenick twice. At the hearing on the motion for a new trial, Lomenick testified she did not inform defense counsel or the trial judge of the information she learned from Walker. Lomenick did not deny Walker's version of the events. At the conclusion of the motion hearing, Lomenick stated, "I would have brought [Walker's testimony] to the court's attention had I thought it would ... be exculpatory in any manner." The trial judge overruled appellant's motion for new trial.

The Court of Appeals acknowledged Walker's testimony was exculpatory but

---

1. Specifically, appellant's grounds for review state:
 Point of Error [sic] I:
 The Court of appeals and the trial court erred in refusing to grant Appellant a new trial based on the prosecutor withholding exculpatory evidence under the due process clause of the U.S. Constitution, Amendments V and XIV.
 Point of Error [sic] II:
 The Court of Appeals and the trial court erred in refusing to grant Appellant a new trial based on the prosecutor withholding exculpatory evidence under the due process clause of the Texas Constitution, Article I, Section 19.

2. At the hearing the following occurred:
 THE COURT: The Motion for discovery or disclosure of evidence favorable to the accused. Ms. Lomenick, do you have any evidence favorable to the accused?
 MS. LOMENICK: No, I do not judge.
 THE COURT: Favorable to either of the accused?
 MS. LOMENICK: In either case, I do not.

3. The record indicates that Charles Sims had died by the time of trial.

held appellant failed to show enough harm to warrant reversal. Slip op. pg. 12. Relying upon *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court of Appeals held, "[i]n light of the entire record, Walker's evidence creates no *reasonable doubt* about Thomas's guilt." [4] Slip op. pg. 14.

## II.

In order to address appellant's grounds for review, we must first review the history of the State's duty to disclose favorable evidence. The State's duty to disclose evidence favorable to the defendant is an extension of *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). In *Mooney*, the Supreme Court established the general rule that a prosecutor's knowing use of perjured testimony violated the defendant's right to due process under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mooney*, 294 U.S. at 112, 55 S.Ct. at 342. *See also, Pyle v. Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942). In *Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957), the Supreme Court expanded the rule in *Mooney* and held the prosecutor's knowing failure to correct a witness' perjured testimony denied the defendant due process. The Court noted the prosecution's failure to correct a witness' perjured testimony, which would have supported the defendant's theory of mitigating circumstances, prevented the defendant from effectively corroborating his own defensive theory. *Alcorta*, 355 U.S. at 31, 78 S.Ct. at 105. The Supreme Court expanded the prosecutorial duty to correct perjured testimony to include perjured testimony which related to the witness' credibility and not just the facts of the case. *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3

L.Ed.2d 1217 (1959). In *Napue*, the Court held a prosecutor's knowing failure to correct perjured testimony which related to the witness' credibility violated the defendant's right to due process. *Napue*, 360 U.S. at 269, 79 S.Ct. at 1177.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court recognized the underlying principle of *Mooney* was

... not punishment of society for the misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.

*Brady*, 373 U.S. at 87, 83 S.Ct. at 1197.

Brady was charged with first degree murder, a capital offense. At his trial, Brady admitted participating in the crime but claimed his co-defendant committed the murder. Prior to trial, Brady requested disclosure of the co-defendant's extrajudicial statements. The prosecution made several of the statements available but withheld the statement in which the co-defendant admitted the actual homicide. The Supreme Court held the suppression of the co-defendant's confession was a violation of the Due Process Clause of the Fourteenth Amendment. Specifically, the Court held, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97.[5]

The Supreme Court, in *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), interpreted *Brady* as establishing a

---

**4.** Unless otherwise indicated, all emphasis herein is supplied by the author.

**5.** Because *Brady* was aimed at ensuring that an accused receives a fair trial rather than punishing the prosecutor for failing to disclose favorable evidence, the prosecution's obligation to disclose is not measured by the moral culpability, or the willfulness, of the prosecutor. *Agurs*, 427 U.S. at 110 & n. 17, 96 S.Ct. at 2400 & n. 17. *U.S. ex rel. Smith v. Fairman*, 769 F.2d 386 at

392 (7th Cir.1985). In *Brady* cases the good or bad faith of the State is irrelevant for due process purposes. However, in the cases where the State fails to preserve "potentially" useful evidence there is no violation of the Due Process Clause without a showing of "bad faith" on the part of the State. *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988).

three prong test for when nondisclosure of evidence favorable to the accused violated the Due Process Clause. Under this test, the accused had to establish: 1) suppression by the prosecution after a request by the defense; 2) the evidence's favorable character for the defense; and 3) the materiality of the evidence. *Moore,* 408 U.S. at 797–795, 92 S.Ct. at 2568.

In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court was called upon to determine whether the prosecutor has a duty, in the absence of a specific request, to disclose exculpatory evidence to the defense, and if so, what standard of materiality gives rise to that duty. *Agurs,* 427 U.S. at 107, 96 S.Ct. at 2399. To resolve the issue the Court recognized three standards of materiality. First, in the case of a prosecutor's knowing use of perjured testimony, the conviction will be reversed "if there is any reasonable likelihood that the false testimony could have affected the judgement of the jury." *Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397 (footnote omitted).

Second, in the case of a specific request, the Court noted:

> ... Although there is, of course no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

*Agurs,* 427 U.S. at 106, 96 S.Ct. at 2399.

Finally, when there was no request or only a general request, a "reasonable doubt" standard applied because a finding of guilt is permitted only when supported by "evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence create[d] a reasonable doubt that did not otherwise exist, constitutional error has been committed." [6] *Agurs,* 427 U.S. at 113, 96 S.Ct. at 2402. Restated, if the withheld evidence created a reasonable doubt as to the defendant's guilt or punishment, the conviction had to be reversed. However, "if there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* Furthermore, in determining whether the omitted evidence raised a reasonable doubt, "the omission must be evaluated in the context of the entire record." *Id.* (footnote omitted). However, the Court recognized there were "situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request." *Agurs,* 427 U.S. at 110, 96 S.Ct. at 2401 (footnote omitted).

In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court expanded the definition of favorable evidence to include both exculpatory evidence and impeachment evidence, because "[s]uch evidence is 'favorable to the accused' [citation omitted], so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380.

The *Bagley* Court eliminated the request prong of *Brady* and revised the three standards of materiality in *Agurs* to two standards. First, in situations of the knowing use of perjured testimony the Court retained the harmless error standard. *Bagley,* 473 U.S. at 679, 105 S.Ct. at 3382, n. 9. The Court then combined the materiality standards for situations where the prosecutor failed to disclose favorable evidence.

We find the *Strickland* [*v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] formulation of the *Agurs* test for materiality sufficiently

---

6. The Court described a constitutional violation as follows:

Unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose.

*Agurs,* 427 U.S. at 108, 96 S.Ct. at 2399.

flexible to cover 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding, would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome.

*Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.[7]

Consequently, the Due Process Clause of the Fourteenth Amendment is violated when a prosecutor fails to disclose evidence which is favorable to the accused that creates a probability sufficient to undermine the confidence in the outcome of the proceeding.

### III.

The Court of Appeals, relying on *Agurs,* concluded the evidence did not create a *reasonable doubt* as to appellant's guilt. As can be seen from the foregoing analysis, the Court of Appeals applied the wrong standard of materiality. Under *Bagley* the reasonable probability standard, *not* the reasonable doubt standard, is to be used to determine materiality. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. Therefore, we must now examine appellant's "Brady claim" utilizing the *Bagley* standard of materiality.

■ As previously noted, a three part test is used to determine when a prosecutor has violated the Due Process Clause of the Fourteenth Amendment. Such a violation occurs when a prosecutor 1) fails to disclose evidence 2) which is favorable to the accused 3) that creates a probability sufficient to undermine the confidence in the outcome of the proceeding. We must first determine whether the prosecutor failed to

disclose Walker's testimony. The record indicates that Walker was questioned by the police several days after the alleged offense, and interviewed by Lomenick twice, the last time in the courtroom on the first day of trial. The State did not deny or refute the content of Walker's testimony during the hearing on appellant's motion for new trial. Clearly, the first part of the test has been met because the State knew of Walker's testimony and failed to disclose the content of Walker's testimony to appellant.

■ We must next determine whether the evidence was favorable. Favorable evidence is any evidence that "if disclosed and used effectively, it *may* make the difference between conviction and acquittal." *Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380. Favorable evidence includes both exculpatory and impeachment evidence. Walker's testimony tends to exculpate appellant and impeaches the testimony of the two eyewitnesses upon whom the State relied to convict. Exculpatory testimony is "[testimony] or other evidence which tends to justify, excuse or clear the defendant from alleged fault or guilt." *Black's Law Dictionary,* pg. 566 (5th ed. 1990). Impeachment evidence is that which is offered "... to dispute, disparage, deny, or contradict...." *Black's Law Dictionary,* pg. 678 (5th ed. 1990). Therefore, Walker's testimony was favorable and the second part of the test is has been satisfied.

■ The third part of the test requires us to determine whether Walker's testimony was material, i.e., created a probability sufficient to undermine the confidence in the outcome of the proceeding. To make this determination we must examine the alleged error in the context of the entire record. *Bagley,* 473 U.S. at 683, 105 S.Ct. at 3384. *See also, Agurs,* 427 U.S. at 113,

---

7. *Appellant contends the harmless error standard of Tex.R.App.P. 81(b)(2) should apply. However, the reasonable probability standard is not the same as Rule 81(b)(2). As its name suggests, the reasonable probability standard requires a determination of the probability the withheld evidence would have had on the outcome. Additionally, the burden rests with the defendant to prove the error. Strickland, 466 U.S. at 696, 104 S.Ct. at 2069. On the other*

hand, the harmless error standard requires the State to prove the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Therefore, under the reasonable probability standard, a defendant must prove the error probably *was* harmful to be entitled to relief, while errors which *might* have been harmful entitle a defendant to relief under Rule 81(b)(2).

96 S.Ct. at 2402. Furthermore, we must examine the error in context of the overall strength of the State's case. *Id.* In this context the *Agurs* Court stated:

> If ... one of only two eyewitnesses to a crime had told the prosecutor that the defendant was definitely not its perpetrator and if this statement was not disclosed to the defense, no court would hesitate to reverse a conviction resting on the testimony of the other eyewitness. But if there were fifty eyewitnesses, forty-nine of whom identified the defendant, and the prosecutor neglected to reveal that the other, who was without his badly needed glasses on the misty evening of the crime, had said that the criminal looked something like the defendant but couldn't be sure as he had only had a brief glimpse, the result might well be different.

*Id.,* 427 U.S. at 113, 96 S.Ct. at 2402, n. 21 (quoting Comment, *Brady v. Maryland and The Prosecutor's Duty to Disclose,* 40 U.Chi.L.Rev., 112, 125 (1972). Consequently, a verdict which is only weakly supported by the record is more likely to be affected by the prosecutorial error than a verdict which is strongly supported. *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

Finally, "the reviewing court may consider directly any adverse effect that the prosecutor's [nondisclosure] might have had on the preparation or presentation of the defendant's case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's [failure to disclose]." *Bagley,* 473 U.S. at 683, 105 S.Ct. at 3384.

With the foregoing in mind, we note the State relied exclusively upon the testimony of Jeannie Sims and Denise Crowder to implicate appellant in the murder; no other evidence linked appellant to the alleged offense. The State's case, therefore, rested upon the credibility of only two witnesses. It follows that evidence tending to exculpate appellant or impeach their testimony would have undermined the State's case. *See, Bowen v. Maynard,* 799 F.2d 593, 610 (10th Cir.1986); *United States ex. rel. Smith v. Fairman,* 769 F.2d 386 (7th Cir. 1985); and *Lindsey v. King,* 769 F.2d 1034 (5th Cir.1985). Walker's testimony does both.

 Walker's testimony is exculpatory. As previously noted, Walker testified to seeing appellant in front of the apartment building. The shooting occurred behind the building. According to Walker, appellant could not have moved from the back of the apartment building to the front yard within the few seconds it took Walker to run downstairs and outside the apartment building. Therefore, Walker's testimony exculpates appellant; appellant could not have committed the murder because he was in front of the apartment building at the time of the shooting. Accordingly, Walker's *exculpatory* testimony was material in that it created a probability sufficient to undermine confidence in the verdict.[8]

Additionally, Walker's testimony impeaches the testimony of Jeannie Sims and Crowder. Jeannie Sims testified she saw appellant shoot the decedent once and then heard more shots after she went to the front of the apartment building. However, Walker testified that Jeannie Sims was watching a movie upstairs in the apartment when the shooting occurred and *followed*

---

**8.** Although Walker's testimony tends to exonerate appellant, *Brady* does not require the exculpatory evidence be certain to exonerate, only that it *may* do so if used effectively. *See, Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380; *see also, Brady,* 373 U.S., at 82–83, 83 S.Ct., at 1197 ("A prosecution that withholds evidence on demand of an accused which, if made available, would *tend* to exculpate him or reduce the penalty

helps shape a trial that bears heavily on the defendant ... [and] casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice ..."). To require that favorable evidence conclusively exonerate a defendant would be inconsistent with *Brady* because it would establish such a high standard of materiality as to foreclose all but the most egregious cases of withheld evidence.

Walker and Charlie Sims downstairs when the shooting ceased.

Walker further testified that, after running downstairs, he saw appellant in the *front* yard of the apartment building arguing with a woman seated in a car. Although not clear from the record, the woman seated in the car appears to be Crowder, who remained in the car after her arrival. However, Crowder testified she was in the back of the apartment building and saw appellant shoot the deceased. Further, Crowder testified that immediately after the incident, appellant allegedly forced her into a car in *back* of the apartment building.

■■■ Walker's testimony as to the locations of Jeannie Sims and Crowder clearly impeaches their claims of having seen the shooting. Jeannie Sims could not have both witnessed the first shot and been upstairs during the shooting. Likewise, Crowder testified that she was behind the apartment building during the alleged offense and then was subject to an attempted abduction. However, Walker's testimony places both appellant and Crowder in the front of the apartment building immediately after the shooting.

Accordingly, had Walker's testimony been disclosed, appellant, could have used the testimony to controvert that of Jeannie Sims and Crowder. *See, Fairman,* 769 F.2d at 393; and *Lindsey,* 769 F.2d at 1042. Because the two witnesses were the linchpin of the State's case, Walker's impeachment testimony is sufficient to undermine confidence in the verdict. *See Id.; see also, Williams v. Whitley,* 940 F.2d 132 (5th Cir.1991). Accordingly, Walker's *impeachment* testimony was material.[9]

Furthermore, the materiality of Walker's *impeachment* testimony is especially compelling when we consider the overall strength of the State's case. The inconsistencies between the testimony of Jeannie Sims and Crowder weakened the State's case. Jeannie Sims testified that she saw appellant drag the deceased off the front porch and, along with Davis, pistol whip the deceased while dragging him up the driveway towards the back of the apartment building. However, Crowder testified that immediately after the deceased was pulled off the porch, appellant approached her while she sat in the deceased's car. Crowder did not see anyone drag the deceased up the driveway, and Jeannie Sims did not mention that appellant approached Crowder after dragging and beating the deceased.

Also, while both Jeannie Sims and Crowder testified to having seen appellant shoot the deceased, neither mentions the other being present.[10] On direct examination, Jeannie Sims indicated that she was by the back corner of the apartment building when appellant allegedly fired the first shot. Crowder testified that she also was standing by the back corner of the apartment building when the first shot was fired but saw only appellant, Davis and the deceased. At no time did Crowder mention seeing Jeannie Sims. Therefore, Crowder's testimony contradicts that of Jeannie Sims and Walker's *impeachment* testimony would have cast further doubt on the credibility of one or both of these witnesses.

Finally, the State's failure to disclose Walker's testimony adversely affected the preparation and presentation of appellant's case. By failing to disclose Walker's *exculpatory* testimony, the State prevented appellant from effectively mounting a de-

---

**9.** Assuming arguendo Walker's testimony would not have been sufficient to controvert the testimony of both Jeannie Sims *and* Crowder, his testimony would nevertheless be material because it could have raised doubts as to the credibility of one of the witnesses. As the Fifth Circuit stated in *Lindsey:* "[O]ur experience at the bar has been that positive identification by two unshaken witnesses possesses many times the power of such an identification by one only, and that *the destruction by cross-examination of the credibility of one of two crucial witnesses—*

*even if the other remains untouched—may have consequences for the case extending far beyond the discrediting of his own testimony." Lindsey,* 769 F.2d at 1042.

**10.** Although the record is unclear as to their distance and exact location, Jeannie Sims' and Crowder's testimony suggests that both were around the rear corner of the apartment building between 10 to 20 feet from the shooting.

fense, *Lindsey*, 769 F.2d at 1040, and denied the jury an exculpatory version of the events when deliberating appellant's guilt. Moreover, without Walker's *impeachment* testimony, appellant was severely limited in challenging the credibility of the State's two eyewitnesses.

Therefore, Walker's *exculpatory* testimony was material, as was his *impeachment* testimony, because his testimony created a probability sufficient to undermine confidence in the outcome of appellant's trial. Accordingly, the third part of the test has been met.

For these reasons, we hold the Due Process Clause of the Fourteenth Amendment was violated when the State failed to disclose Walker's testimony.[11]

### IV.

■ The State has an affirmative duty to disclose evidence favorable and material to a defendant's guilt or punishment under the Due Process Clause of the Fourteenth Amendment. *Brady*, 373 U.S. at 87–88, 83 S.Ct. at 1197. This duty attaches with or without a request for the evidence. *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383. When unsure of whether to disclose the evidence, the prosecutor should submit the evidence to the trial judge for his consideration. *Agurs*, 427 U.S. at 106, 96 S.Ct. at 2399.

The judgments of the Court of Appeals and the trial court are reversed and this case is remanded to the trial court.

McCORMICK, P.J., concurs in the result.

---

11. Having determined the Due Process Clause of the Fourteenth Amendment was violated, we need not address appellant's second ground for review.