11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Clinton Dale Shelton

Appellant

Vs.                   Nos.  11-01-00056-CR & 11-01-00057-CR --
Appeals from Dallas County

State of Texas

Appellee

 

Michael
Hierro and his wife, Marissa, were ambushed at their home on the evening of
December 20, 1999.  Upon exiting their
car, Michael was shot and killed. 
Marissa ran; the assailant, a stocky white man wearing a dark mask,
chased her.  A female voice called out, A[S]hoot her, shoot her.@ 
Marissa recognized the voice as that of Catherine Shelton, her former
employer.  Marissa was shot and severely
wounded.  Playing dead, Marissa heard
the assailants arguing about shooting her again.  Marissa recognized the voice of the other assailant as that of
Clinton Dale Shelton, appellant. 

The jury
found appellant guilty of the murder of Michael in Cause No. 11-01-00057-CR and
sentenced him to life imprisonment plus a $10,000 fine.  The jury also found him guilty of the
aggravated assault of Marissa in Cause No. 11-01-00056-CR and sentenced him to
20 years confinement and a $10,000. 
Appellant appeals.  We affirm.

Appellant
asserts six points of error.  Appellant
contends that:  (1) the trial court=s admission of hearsay violated his rights to
confrontation, cross-examination, and due process; (2) the trial court=s failure to order production of the relevant
portions of the portable toilet violated his rights to cross-examination and
due process; (3) the State=s failure to disclose the contradictory statements of the complaining
witness violated his right to due process; (4) the trial court=s admission of a four-page document seized
from his home denied him his right to be free from unreasonable searches and
seizures; (5) the trial court=s refusal to provide a hearing on his motion for new trial violated his
right to due process; and (6) the trial court=s denial of his motion for an instruction defining reasonable doubt
violated his right to due process.  








Appellant
does not challenge the sufficiency of the evidence.  We will summarize all the evidence in the light most favorable to
the verdict.  Jackson v. Virginia, 443
U.S. 307 (1979). 

J. B.
Rutherford, a Rowlett police officer, 
responded as a backup unit to 3000 Chaha Road on the night of December
20.  As he approached the Hierro=s Lexus which was still running with both
doors open, Officer Rutherford found a sawed-off shotgun on the sidewalk.  After the crime scene was sealed off,
Officer Rutherford entered a portable toilet near the driveway of the Hierro=s home. 
The portable toilet had been placed there by a construction
company.  Officer Rutherford found
rubber gloves and pantyhose in the portable toilet that appeared to be designed
as a mask.

            John
Donahue, a deoxyribonucleic acid (DNA) serology analyst for the Texas
Department of Public Safety, tested the pantyhose and found body fluids on the
area where the mouth would have been if the material was used as a mask.  The DNA on the pantyhose matched appellant=s DNA.

Appellant
testified in the guilt/innocence phase of the trial.  Appellant offered his version of the facts to explain why the
mask contained his DNA.  Appellant
stated that he was divorcing Catherine and that he wanted Marissa to testify on
his behalf.  Appellant knew Marissa
would not be a willing witness. 
Appellant stated that he drove to the Hierro residence in Rowlett on
several prior occasions.  Appellant
explained that he was attempting to verify that Marissa lived at the address so
that he could subpoena her in his divorce case. 

Appellant
stated that he wore the mask on December 19. 
Appellant did this because he knew that he was going to approach the
house and that, if Marissa saw him, she might hide and avoid service.  Appellant testified that he wore the gloves
because he did not want to leave fingerprints. 
Appellant explained that Marissa had access to fingerprinting equipment
and that he did not want to be accused of window peeping or trespassing.  Appellant said that, when he could not see
into the house, he retraced his steps, stepped into the portable toilet,
relieved himself, and threw the mask and gloves into the receptacle.  

Charles
Walter Lakes services portable toilets for Browning Ferris, Inc. (BFI).  Lakes testified that he cleaned the portable
toilet the morning of the murder.  Lakes
stated that, if the mask and gloves were in the portable toilet the morning of
the murder, the vacuum pump would have disposed of these items.  The mask and gloves would not have been left
behind for police to find the night of the murder.








Mark
Hardman, a detective with the Rowlett police department, was called to conduct
surveillance of appellant=s home in Copper Canyon on December 21, 1999.  Detective Hardman arrived at about 4:20 a.m. and took five trash
bags from the home=s
trash receptacle.  Detective Hardman
found some men=s purple Hanes underwear in the trash.   James Adams, a trace evidence analyst,
testified that two holes in the purple underwear were 6.3 centimeters apart,
about the distance between normal human eyes. 

On
December 28, Detective Hardman was still conducting surveillance on the Shelton
home.  David Nabors, a lieutenant with
the Rowlett police department, assisted with another collection of trash from
the home and examined the contents. 
Lieutenant Nabors testified that the trash contained 31 pairs of
pantyhose, some loose and some still in packages.  This was prior to any release to the press about the pantyhose
mask found in the portable toilet. 

Detective
Hardman executed a search warrant on the Shelton home on December 29.  Copies of a letter were taken from the
home.  The letter, written by appellant,
detailed appellant=s
activities on Monday, December 20, and Tuesday, December 21.  Detective Hardman conducted surveillance on
appellant during much of the time described in the letter.  He said that appellant=s letter was not accurate about appellant=s activities. 

Michael
Smith, a forensic metallurgist, testified that he examined several saws seized
from the Sheltons=
home.  One saw had re-sulfurized steel
fragments on the blade consistent with the barrel of the shotgun. 

Marilyn
Maria Craig Langston was Catherine=s accountant.  In September
1999, she went to the Shelton home to help Catherine set up her computer
system.  During this visit, she had
dinner with Catherine and appellant. 
Langston testified that, during dinner, Catherine told appellant that
she wished Marissa would just fall off the face of the earth or be dead.  As Langston was leaving the house, appellant
told Langston that, if Marissa showed up on the property, Marissa would not
leave.

In his
first point of error, appellant asserts that the statement made by Catherine to
Langston was inadmissable hearsay.  We
disagree.  Catherine=s statement was admissible to show her then
existing state of mind.  TEX.R.EVID.
803(3). The trial court did not abuse its discretion.  Coffin v. State, 885 S.W.2d 140, 149 (Tex.Cr.App.1994).  Appellant=s first point is overruled.








The State
introduced photographs.  In his second
point of error, appellant argues that the admission of the photograph of the
service sticker located inside the door of the portable toilet, as opposed to
the actual sticker, violated the best evidence rule.  The photographs revealed the cleaning dates for the portable
toilet and indicated that it was serviced the morning of the murder.

TEX.R.EVID.
1002 provides that, to prove the content of a writing, the original writing is
required.  However, a photograph is a
duplicate.  TEX.R.EVID. 1001(d) &
1003;  Narvaiz v. State, 840 S.W.2d 415,
431 (Tex.Cr.App.1992).  Duplicates are
admissible unless a question is raised as to the authenticity of the
original.  Rule 1003. 

The
officers testified that the photographs were taken on the following February
after the crime.  The testimony
identified the photographs, described the circumstances under which they were
taken, and reflected that the toilet and sticker appeared the same as they
looked on the previous December. 

The night
of the murder, Lakes watched the news and recognized the portable toilet.  At trial, Lakes identified a photograph of
the portable toilet.  The portable
toilet was used for a nearby house construction.  Lakes said that he that had serviced this particular unit.  When he had finished with his cleaning,
Lakes dated the sticker on the inside of the door to the portable toilet.  Lakes identified another picture as a
photograph of the sticker that he had dated, December 20, 1999.  Admission of the photographs did not violate
Rule 1002.  Narvaiz v.  State, supra at 431.  Appellant=s second point of error is overruled. 

After
Marissa had left Catherine=s employment, Marissa and Catherine had a meeting.  At this meeting, Marissa said that Catherine
made threats, one of which was ALarry Robinson will kill you.@  Robinson was a former client
of Catherine.

During her
stay at the hospital, Marissa was interviewed three times by Officer Jimmy
Patterson of the Rowlett police department. 
Officer Patterson said that two of the three interviews had been
terminated early because Marissa was in pain, on medication, and drowsy and
fell asleep.  During the second
interview, Marissa mentioned the conversation with Catherine about
Robinson.  After the assault, the police
investigated Robinson and eliminated him as a suspect.








Appellant
had filed a pretrial motion to produce exculpatory and mitigating
evidence.  The State responded that
Marissa made no formal statements.  The
State overlooked the interviews Marissa had with Officer Patterson.  Marissa testified that she did not remember
two of the interviews or making the ARobinson@ statements to the officer. 

After the
direct examination of Marissa in the guilt/innocence phase, the state revealed
the statement about Robinson.  Appellant=s trial counsel sought a delay to fully
investigate Robinson and his possible involvement.  The trial court allowed counsel a few minutes to inspect the
officer=s notes. 
The cross-examination of Marissa continued.  This was on a Thursday, and the trial was continued until the
following Monday.

On Monday,
appellant filed a motion for disclosure of identity and investigative
information of named assailant and for additional time to investigate.  Appellant=s motion was denied.  The State
offered to locate Robinson and bring him to court for appellant=s examination.  Appellant=s trial counsel had an opportunity to examine and use Officer Patterson=s notes in his cross-examination.  There was no indication that Robinson was
ever located or presented. 

In his
third point of error, appellant asserts that the State=s failure to disclose Marissa=s contradictory statements violated his right
to due process under the 14th amendment to the U.S. Constitution.  Appellant argues that Marissa=s statement about Robinson contradicts her
testimony identifying appellant as the assailant.  A due process violation occurs when a prosecutor (1) fails to
disclose evidence, (2) favorable to the accused, (3) which creates a
probability of a different outcome. 
Wyatt v. State, 23 S.W.3d 18, 27 (Tex.Cr.App.2000), citing Thomas v.
State, 841 S.W.2d 399, 404 (Tex.Cr.App.1992). 


After
considering all of the evidence, we do not find that Marissa=s reference to Robinson was favorable to
appellant or that it created the probability of a different outcome.  Marissa identified Catherine=s and appellant=s voices and physical appearances as belonging to the assailants.  Appellant was the only male assailant
present.  His DNA matched that on the
mask found at the scene.  Appellant=s third point is overruled.








In his
fourth point of error, appellant argues that the trial court=s admission of a four-page letter seized from
his home denied him his right to be free from unreasonable searches and
seizures.  The letter was written by
appellant and described his activities during the days immediately surrounding
the time of the offenses.  Appellant
testified that he wrote the letter for one of Catherine=s attorneys to provide an accounting of where
the couple was on the Monday and Tuesday of the week of the murder.  Appellant=s trial counsel objected to the admission of the document during trial.

TEX. CODE
CRIM. PRO. ANN. art. 18.02(10) (Vernon Supp. 2002) specifies that a search
warrant may be issued to search for and seize property or items, except the
personal writings by the accused, constituting evidence of an offense or
constituting evidence tending to show that a particular person committed an
offense.  However, third parties have
the authority to consent to a search when they have equal control over and equal
use of the premises being searched.  United
States v. Matlock, 415 U.S. 164, 172 (1974); Maxwell v. State, 73 S.W.3d 278,
281 (Tex.Cr. App.2002).  The common
authority derives from the mutual use of the property, not the ownership or
lack thereof.  Maxwell v. State, supra
at 281-82.

When the officers
arrived at the Shelton home to execute the search warrant, Catherine was the
only person home.  Catherine told the
officers conducting the search to make copies of anything in the house and even
explained how to use her fax machine to make copies.  It is undisputed that, at the time of the search, both Catherine
and appellant were living in the home as husband and wife.  Catherine had the authority to consent to
the search.  The fourth point is
overruled.

In his
fifth point of error, appellant argues that the trial court=s refusal to hold a hearing on his motion for
new trial violated his right to due process.  The trial
court denied the motion without a hearing on December 19, 2000.  We review a trial court=s
denial of a hearing on a motion for new trial under an abuse of discretion
standard. State v. Gonzalez, 855 S.W.2d 692, 695 (Tex.Cr.App.1993).

The
right to a hearing on a motion for new trial is not absolute.  Torres v. State, 4 S.W.3d 295, 296 (Tex.App.
- Houston [1st Dist.] 1999, no pet=n).  In some instances, a defendant has the right to a hearing on a
motion for new trial when the motion raises matters that cannot be determined
from the record.  Reyes v. State, 849
S.W.2d 812, 816 (Tex.Cr.App.1993).  As a prerequisite to a hearing,
the motion for new trial must be supported by affidavit of the accused or
someone else specifically showing the truth of the grounds alleged as a basis
for a new trial.  Reyes v. State, supra
at 816.  If the defendant=s
motion and affidavit are sufficient, a hearing on the motion is mandatory.  Reyes v. State, supra at 816.








There
is no affidavit attached to appellant=s motion for new trial.  Instead, there is a verification signed by
appellant=s
attorney which states:  

I
am the attorney for Clinton Dale Shelton and have been unable to converse with
my client since the trial of this matter as correctional officials transferred
Mr. Shelton to the TDCJ shortly after the trial of this matter, and; therfore
(sic), I have been unable to have Defendant sign this Motion for New
Trial.  However, I have read the above
and foregoing Motion For New Trial and all of the allegations of fact contained
therein are true and correct.

 

A
similar verification was found to be insufficient as an affidavit in support of
a motion for new trial in Alcott v. State, 26 S.W.3d 1 (Tex.App. B Waco
1999), aff=d, 51 S.W.3d 596 (Tex.Cr.App.2001).  In Alcott, the
verification read in part: AI prepared the foregoing
DEFENDANT=S
MOTION FOR NEW TRIAL.  I have personal
knowledge of facts presented in this motion and they are true and correct.@  As in Alcott, the verification
attached to the motion for new trial is not a supporting affidavit.  It lacks sufficient detail to put the trial
court on notice that reasonable grounds for relief existed.  A hearing on the motion was not
mandatory.  Appellant=s
fifth point is overruled.  

In
his sixth point of error, appellant complains that the trial court denied his
motion for an instruction defining reasonable doubt.  An instruction is not necessary. 
Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App.2000).  The sixth point is overruled.

The
judgments of the trial court are affirmed.

 

PER CURIAM

 

July 25, 2002

Do not
publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J.,
and

Wright, J., and McCall, J.