6-96-028-CV Long Trusts v. Dowd 


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00091-CV
______________________________



IN RE:
CONSTRUCTION NETWORK, INC.




                                                                                                                                                             

Original Mandamus Proceeding





                                                                                                                                                             
                          


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPI N ION

            On July 14, 2005, Construction Network, Inc. (CNI) filed a petition for writ of mandamus
in this Court asking us to direct the trial court to order the case to arbitration. See Tex. Gov't Code
Ann. § 22.221 (Vernon 2004); see also Tex. R. App. P. 52.
            Mandamus relief is an extraordinary remedy. In re J.D. Edwards World Solutions Co., 87
S.W.3d 546, 549 (Tex. 2002). We will issue a writ of mandamus only when the mandamus record
establishes (1) a clear abuse of discretion or the violation of a legally imposed duty, and (2) the
absence of a clear and adequate remedy at law. Id.; Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex.
1994). It is the relator's burden to show entitlement to the requested relief. See Johnson v. Fourth
Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). The relator must establish
that the trial court could reasonably have reached only one decision. Walker v. Packer, 827 S.W.2d
833, 839–40 (Tex. 1992) (orig. proceeding).
            CNI contends the trial court abused its discretion in denying CNI's motion to compel
arbitration. Based on the record before us, however, we conclude CNI has not demonstrated it is
entitled to mandamus relief. See Tex. R. App. P. 52.8(a); Walker, 827 S.W.2d at 839–44.
 
 
 
 
            Accordingly, we deny CNI's petition for writ of mandamus.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          August 23, 2005
Date Decided:             August 24, 2005



M> Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000); Franks
v. State, 90 S.W.3d 771, 796 (Tex. App.--Fort Worth 2002, no pet.). Evidence is material if there
is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have
been different. Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under Brady, the
defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable the
outcome of the trial would have been different had the prosecutor made a timely disclosure. Id. The
mere possibility that an item of undisclosed information might have helped the defense, or might
have affected the outcome of the trial, does not establish materiality in the constitutional sense. Id.

 We find Chandler has failed to make sufficient showings on the two necessary parts of his
Brady claim: that the evidence was favorable and material. Whether unrevealed evidence would
have been "favorable" to the accused must be determined by ascertaining whether the evidence "if
disclosed  and  used  effectively  .  .  .  may  make  the  difference  between  conviction  and
acquittal." Ex parte Mitchell, 853 S.W.2d 1, 4 (Tex. Crim. App. 1993) (quoting Thomas v. State, 841
S.W.2d 399, 404 (Tex. Crim. App. 1992)). Either exculpatory evidence or impeachment testimony
can be favorable. Id. "Exculpatory evidence" is testimony or evidence which "tends to justify,
excuse, or clear the defendant from alleged fault or guilt." Thomas, 841 S.W.2d at 404. 
"Impeachment evidence" is that which is offered "to dispute, disparage, deny, or contradict." Id. 
The only evidence concerning the video is that it did not clearly depict the confrontation and did not
assist in determining what occurred. It cannot be determined from this record that the recording
would have been favorable to Chandler. 

 For the same reason, we find no suggestion the video contained material evidence, that is,
that there is a reasonable probability that, had the evidence been disclosed to the defense, the
outcome of the proceeding would have been different. Lagrone v. State, 942 S.W.2d 602, 615 (Tex.
Crim. App. 1997) (quoting Ex parte Kimes, 872 S.W.2d 700, 702 (Tex. Crim. App. 1993)). The
standard is that of "a 'reasonable probability' of a different result," so that the issue "is not whether
the defendant would more likely than not have received a different verdict with the evidence, but
whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of
confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). A "reasonable probability," then, is a
probability "sufficient to undermine confidence in the outcome of the trial." Id.; Lagrone, 942
S.W.2d at 615. Since there is no showing that the evidence is favorable to the defendant, it cannot
be concluded that the evidence was material--that, if Chandler had known of the video before trial
there is a reasonable probability the outcome of the trial would have been different. 

 B. Failure to Preserve

 The failure to preserve potentially useful evidence is not a denial of due process unless a
criminal defendant can show bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Neal v.
State, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); Thomas, 841 S.W.2d at 402 n.5; Jackson v.
State, 50 S.W.3d 579, 589 (Tex. App.--Fort Worth 2001, pet. ref'd); Williams v. State, 906 S.W.2d
58, 61 (Tex. App.--Tyler 1995, pet. ref'd). The Brady duty extends to evidence that is known only
to police investigators and not to the prosecutor. The individual prosecutor has a duty to learn of any
favorable evidence known to the others acting on the government's behalf in the case, including the
police. Youngblood v. West Virginia, 547 U.S. 867, 870 (2006). The State's duty to preserve
evidence is limited to evidence that possesses an exculpatory value that was apparent before the
evidence was destroyed. California v. Trombetta, 467 U.S. 479, 488 (1984). The burden is on
Chandler to show that the State acted in bad faith in failing to preserve evidence. McGee v. State,
210 S.W.3d 702, 704 (Tex. App.--Eastland 2006, no pet.). 

 Three factors which have been deemed relevant in determining whether the loss of evidence
violates a defendant's right to due process are: 1) the level of government culpability; 2) the
likelihood that the lost evidence was exculpatory; and 3) the likelihood that the defendant was
significantly prejudiced at trial by the absence of the evidence. Davis v. State, 831 S.W.2d 426, 442
(Tex. App.--Austin 1992, pet. ref'd). Unless the defendant can show bad faith on the part of the
police, failure to preserve potentially useful evidence does not, in and of itself, result in denial of due
process. Id.; see Youngblood, 488 U.S. at 58. The defendant's due process is only implicated "in
those cases in which the police themselves by their conduct indicate that the evidence could form
a basis for exonerating the defendant." Youngblood, 488 U.S. at 58; see also Trombetta, 467 U.S.
at 486.

 Several other Texas appellate courts have considered this issue--the failure to preserve
potentially useful video recordings. In each of these cases, the courts have found the facts did not
establish evidence of bad faith. Meador  v.  State,  No.  2-07-439-CR,  2008  Tex.  App.  LEXIS
 7906  (Tex. App.--Fort Worth Oct. 16, 2008, no pet.) (mem. op., not designated for publication)
(accidentally erased video); Purvis v. State, No. 12-06-00422-CR, 2008 Tex. App. LEXIS 3962
(Tex. App.--Tyler May 30, 2008, no pet.) (mem. op., not designated for publication) (loss of tape
result of negligence, not bad faith); Smith v. State, No. 07-05-0289-CR, 2007 Tex. App. LEXIS 5427
(Tex. App.--Amarillo July 11, 2007, no pet.) (mem. op., not designated for publication) (no
evidence of bad faith in failing to preserve video recording); McGee, 210 S.W.3d at 705 (video of
security tape of robbery at Wal-Mart that showed no faces was not preserved); Salazar v. State, 185
S.W.3d 90 (Tex. App.--San Antonio 2005, no pet.) (video of prison riot not preserved because
policy of prison was to tape over in  fourteen  days); Mahaffey v. State, 937 S.W.2d 51 (Tex.
App.--Houston [1st Dist.] 1996 , no pet.) (video erased or did not record, no evidence of bad faith). 
 Here, Still explained the video system was not equipped to download or save the recording
to another disk, but it was maintained for sixty days and then discarded. He stated that the recording
did not clearly show the defendant and that it was not useful in the investigation. The evidence
shows that all such surveillance videos are routinely discarded in sixty days. There is nothing in the
record to show bad faith on the part of the State, either by way of the sheriff's office or the State. We
therefore overrule this point. 

III. State's Closing Argument 

 Next, Chandler complains of statements made by the State in closing argument. In its closing
argument, the prosecutor said, 

 You should be asking yourself, Well, you know, I didn't hear any evidence in this
case about what those men did to him once he got in the cell. (4) Did you hear
anything? I didn't hear a thing. And I can guarantee you -- I guarantee you if
something happened to Steven Chandler from those eight men (5) in that cell, don't you
think you would have heard about it? Don't you think every witness would have been
subpoenaed? Don't you think [defense counsel] would be parading them around
here? That's why he was scared to go in there because of these eight men. 

Chandler complains this amounted to a comment on his failure to testify. However, Chandler
posited no objection before the trial court. The failure to object to a jury argument or a defendant's
failure to pursue to an adverse ruling his or her objection to a jury argument forfeits the defendant's
right to complain about the argument on appeal. Before a defendant will be permitted to complain
on appeal about an erroneous jury argument or that an instruction to disregard could not have cured
an erroneous jury argument, he or she will have to show that he or she objected and pursued that
objection to an adverse ruling. Tex. R. App. P. 33.1; Mathis v. State, 67 S.W.3d 918, 927 (Tex.
Crim. App. 2002); Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Based on the
foregoing, we hold that Chandler forfeited his right to complain about the State's argument.

 We affirm the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: January 29, 2009 

Date Decided: January 30, 2009


Publish 
1. This case was transferred to this Court from the Tyler Court of Appeals as part of the Texas
Supreme Court's docket equalization program. We are not aware of any conflict between the
precedent of the Tyler Court and the precedent of this Court on any issue relevant in this appeal. See
Tex. R. App. P. 41.3.
2. 373 U.S. 83 (1963). 
3. Witnesses put the number of people in the book-in area at anywhere from ten to thirty. 
4. One point of dispute in the trial was the reason Chandler refused to go into the holding cell. 
Witnesses testified Chandler made statements at the time that he would "whoop" or fight the men
in that cell; defense questioning tried to suggest Chandler was afraid of those men and feared for his
safety. 
5. It was not conclusively established how many men were in the holding cell; one witness said
the cell could hold at most eight people.