**No. PD-_____**

In The

Court of Criminal Appeals

Of The State of Texas

Austin, Texas

---

CHRISTOPHER JOSEPH CAMPOS,
Petitioner

vs.

THE STATE OF TEXAS

---

**PETITION
FOR
DISCRETIONARY REVIEW**

---

COMES NOW CHRISTOPHER JOSEPH CAMPOS and petitions this Court to review the judgment affirming his conviction for driving while intoxicated in Cause No. 09-14-00481-CR, in the Ninth Court of Appeals, and in Cause No. 299,715 in the County Court at Law No. 2, Jefferson County, Texas. For convenience, the parties will be referred to as "Campos" and "the State." The reporter's record will be referred to as RR (Volume number) (Page number) and the clerk's record will be referred to as CR (Page number).

RECEIVED IN
COURT OF CRIMINAL APPEALS

December 7, 2015

ABEL ACOSTA, CLERK

1

## STATEMENT OF THE CASE

On September 11, 2013, Campos was charged with the offense of driving while intoxicated.[1] On October 22, 2014, Campos filed a motion to exclude testimony regarding HGN test results, which was denied.[2] On October 22, 2014, after Campos pled "not guilty," a jury trial commenced.[3] On October 23, 2014, Campos was found guilty of D.W.I.[4] The Judge sentenced Campos to 90 days in jail, suspended for one year, a $1000 fine and community service.[5] The Ninth Court of Appeals affirmed the conviction on November 2, 2015. The opinion of the Court is attached as Appendix A.

Port Arthur Police detained and ultimately arrested four individuals on the night of August 28, 2013 for driving while intoxicated. Two of the four obtained not guilty verdicts from juries- Terry Copenhaver, in the County Court at Law No. 3 on March 18, 2014; and Patrick Griffin, in the County Court at Law No. 2 on July 10, 2015. The other two cases, State v. Christopher Campos (present case) and State v. Marcus James resulted in convictions from a jury. Both are on appeal to this Court. The Court should consider these two as companion cases because they stem from the same set of facts and have a key common constitutional and evidentiary issue: does the practice of intentionally taking subjects off-camera to administer the Horizontal Gaze Nystagmus test deprive the citizen of due process rights?

---

[1] CR 8.
[2] CR 26
[3] RR 2, 1
[4] CR 17
[5] RR 3, 198

**STATEMENT OF PROCEDURAL HISTORY**

The Court of Appeals rendered its opinion affirming the conviction on November 2, 2015. No motion for rehearing was filed.

**GROUNDS FOR REVIEW**

1. The Court of Appeals erred by failing to address Campos' *Youngblood* and *Kelly* arguments regarding the officer's intentional act of performing the HGN test off-camera in order to deprive Campos of the right to challenge the way in which the test was administered.

2. The Ninth Court of Appeals' opinion in this case conflicts with a case out of the Waco Court of Appeals, *State v. Rudd*, 255 S.W.3d 293 (Tex. App. – Waco 2008, pet. Ref'd).

**STATEMENT OF FACTS**

Campos was pulled over for speeding while driving in Port Arthur, Texas. During the course of the traffic stop, Officer Rogelio Meza began initiating field sobriety testing. Ultimately, Campos was arrested for driving while intoxicated.

Both Officer Meza and his partner, Detective Bearden, made the arrests at the scene. They are, in essence, the DWI Task Force for the Port Arthur Police Department. Both Meza and Bearden testified at trial.

Meza's testimony relied entirely on his administration of the field sobriety tests to conclude that Campos was intoxicated.[6] Meza testified that Campos exhibited six out of six clues on the HGN test.[7] He further testified that he originally wrote in his report that

---

[6] RR 3, 35.
[7] RR 3, 134

Campos exhibited only one out of eight clues on the walk and turn- a passing score- but then said after seeing the video he saw four out of eight clues.[8] He testified that Campos stepped off the line and stopped while walking, when the video clearly shows he did neither of these.[9] Additionally, he testified that Campos did an improper turn by not taking "a series of small steps," but admits that he never instructed Campos to turn by taking a series of small steps.[10] Finally, he testified that Campos exhibited two out of four clues on the one leg stand, yet the video plainly shows Meza demonstrated the test incorrectly- with his toe pointed up instead of foot parallel to the ground- which makes the test more difficult.[11] Moreover, Meza also failed to instruct him, as he is supposed to under the NHTSA Manual, to keep his foot parallel to the ground.[12] Nonetheless, Campos was arrested.

Most importantly to this appeal, however, Meza and Bearden demonstrate during this arrest their practice of intentionally taking each citizen off-camera to administer the HGN test and bringing them back on camera to administer the other two field sobriety tests. No rational explanation for this practice was provided.[13] The only logical conclusion is that it is done to prevent defendants from critiquing the manner in which the test was administered in order to have the results excluded under the third prong of *Kelly*. This case provides a unique opportunity for the Court to see the practice four times in one stop.

---

[8] RR 3, 29-31, 39-40
[9] RR 3, 39, See Meza Dash Cam, State's Exhibit 2, at 20:05.
[10] RR 3, 74, 125-26
[11] RR 3, 131-132 ; Meza Dash cam, state's Exhibit 2, at 20:20.
[12] *Id.*
[13] RR 3, 49

**ARGUMENT**

The trial court should have excluded the HGN test from evidence. Officer Meza intentionally administered the HGN test off camera in an effort to avoid scrutiny at trial. Campos respectfully requests this Court grant review and reverse the Court of Appeal's decision as the admission of the HGN testimony violates fundamental tenants of due process under the circumstances in this case and the Court of Appeals glossed over these constitutional deformities Without the use of the HGN results, the evidence presented at trial was insufficient to support a verdict of guilt beyond a reasonable doubt. Campos performed well on the walk and turn test and was given neither the proper instruction nor the proper demonstration on the one-leg-stand test, the two field sobriety tests that administered on the video tape and thus the jury necessarily placed disproportionate weight of the HGN test results which were not subject to scrutiny.

**REASON FOR REVIEW NUMBER 1:** *The Court of Appeals erred by failing to address Campos' __Youngblood__ and __Kelly__ arguments regarding the officer's intentional act of performing the HGN test off-camera in order to deprive Campos of the right to challenge the way in which the test was administered.*

The fundamental fairness requirement of the due process clause imposes upon the police an undifferentiated and absolute duty to retain and to preserve all evidence that might be of conceivable evidentiary significance in a particular prosecution.[14] In this case, the Court of Appeals glossed over Campos' constitutional due process arguments under *Youngblood* by essentially stating that Detective Meza testified that he is an expert and that he conducted the HGN test correctly, and that there was no evidence introduced

---

[14] See *Arizona v. Youngblood*, 488 U.S. 51, 58, (1988) (citing *Lisenba v. California*, 314 U. S. 219, 236 (1941)).

5

to indicate that Meza acted intentionally or in bad faith.[15] Moreover, the Court of Appeals conflated the due process defects with mere evidentiary complaints.

## A. *Arizona v. Youngblood*

In *Youngblood*, the U.S. Supreme Court followed up the landmark decision of *Brady v. Maryland*, to evaluate cases where the exculpatory value of unpreserved evidence is not known or apparent on its face. A *Youngblood* claim involves a showing that potentially exculpatory evidence was not preserved by the police and that the reason for that suppression was the officer's "bad faith."[16] The Supreme Court noted that the question of bad faith turns on the State's knowledge of the exculpatory value of the evidence at the time it was not preserved.[17] This Court has recognized the applicability of *Youngblood* in Texas since 1992.[18]

## B. The HGN Test

As this Court is aware, the HGN test is only reliable when administered properly. In *Emerson v. State,*[19] this Court held that testimony concerning the HGN test is scientific evidence and is subject to the requirements of *Kelly v. State* to be admissible under Rule 702.[20] This Court held in *Kelly* that in order for evidence derived from scientific theory to be considered reliable, "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question."[21]

---

[15] See Appendix A, at 10-11.
[16] *Youngblood*, 488 U.S. at 57.
[17] *Youngblood*, 488 U.S. at 56 fn *.
[18] *Thomas v. State,* 841 S.W.2d 399, 402 n. 5 (Tex.Crim.App.1992)
[19] *Emerson v. State,* 880 S.W.2d 759 (Tex. Crim. App. 1994)
[20] *Emerson,* 880 S.W.2d at 764.
[21] *Kelly v. State,* 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992).

Even though nystagmus itself may not be seen on a vehicle mounted dash camera, the Defense and the Court can determine whether an officer held the stimulus at the right height and distance, performed the correct number of passes (minimum of fourteen), and took the correct amount of time for each pass. But, only if the test is administered on camera. If these things were not done correctly, then the test should be excluded.

C. Video Compilation Shows Consistent Practice of Performing HGN Off-Camera

The Court of Appeals also ignored overwhelming evidence in this case showing that the practice of performing the HGN test of camera is both intentional and done in bad faith. Upon detaining Campos, Meza escorted Campos from in front of Bearden's patrol vehicle (clearly in the view of the camera) all the way around to the driver's side of his (Meza's) patrol vehicle- so as to be outside of the view of both dash cams- and began to administer the Horizontal Gaze Nystagmus test to him.[22] The video indicates that Bearden's light bar was switched off at 1 minute and 43 seconds of the video, and that neither Meza's nor the other officer's light bars were ever turned on, thus concerns about the light bar would not provide a rationale for administering the test outside of the camera's view. Additionally, all of the testing occurred in the parking lot of the Waffle House, with multiple clearly marked patrol cars blocking the scene, and thus officer and citizen safety were not reasons to administer the HGN off-camera.

Additionally, though, on a video compilation, created by Campos' counsel and submitted to the Court during the Motion to Suppress Hearing, Bearden and Mesa are shown intentionally administering the HGN off camera in several other cases where these two officers have done exactly the same thing. The video likewise showed a State

---

[22] *See* States Exhibit 1, Bearden Dash cam, at 16:45

Trooper performing the HGN test at the wrong speed, the wrong angle, and the wrong number of passes – thus demonstrating that video evidence subjects an officers administration to appropriate scrutiny under the third prong of *Kelly*.[23] The Court refused to consider this evidence as it relates to their intentional and bad faith efforts to deprive defendants of the ability to scrutinize how they administer the one test this Court considers scientific.

Meza's trial testimony is also enlightening as to bad faith. He offers no explanation for taking Campos off camera to perform the HGN test. Meza acknowledges, though, and this is crucial for *Youngblood* analysis, that if he does the HGN on camera, that defense counsel can go through the test with him and determine whether or not he administered it in accordance with the manual.[24] And he admits that Campos was actually standing almost in front of his patrol vehicle and Mesa led him all the way around the back of the vehicle to do the test instead of walking in front of the video camera and doing the test on camera.[25] As the U.S. Supreme Court noted in *Youngblood*, the key to bad faith is whether the State is aware of the exculpatory nature of the evidence at the time of suppression.[26] Meza's responses indicate that he is clearly aware of the potential exculpatory value of seeing the HGN administration, yet over and over again he and his partner choose to administer it off camera.

Without the testimony regarding the HGN test results, the evidence presented at trial was insufficient to support a verdict of guilt beyond a reasonable doubt. The entirety of the Court of Appeals analysis regarding Meza's testimony regarding field sobriety

---

[23] *See* Defendant's Bill of Review Exhibit 2.
[24] RR 3, 134-36.
[25] RR 3, 67
[26] *Youngblood*, 488 U.S. at 56 fn *.

tests – outside of the HGN test - is that Campos exhibited clues on both the walk and turn test and the one-leg-stand test.[27] The Court does not address the numerous problems with Meza's testimony regarding the administration of the walk-and-turn or the one-leg-stand test as outlined in Campos' brief to the Court of Appeals. Meza intentionally administered the test off-camera, then concluded that Campos had demonstrated six out of six clues on the test. It was the only test where Meza was able to describe a conclusive "failure" by Campos and was also the only test whose administration cannot be scrutinized by Campos' counsel. The trial court's decision to admit the HGN test in this case becomes exceptionally more important and harmful given the weakness of the other evidence presented.

**REASON FOR REVIEW NUMBER 2:** *The Ninth Court of Appeals' opinion in this case conflicts with an opinion of the Waco Court of Appeals, <u>State v. Rudd</u>, 255 S.W.3d 293 (Tex. App. – Waco 2008, pet. Ref'd).*

In *State v. Rudd,*[28] the Waco Court of Appeals upheld the exclusion of HGN evidence because the trooper intentionally administered the HGN test out of the view of the camera and yet made sure the walk and turn and one leg stand were videoed. That is precisely the scenario in the present case. In fact, Campos would point out that *Rudd* and this case are factually indistinguishable. As Meza did here, the Trooper in Rudd testified that he administered the HGN correctly in accordance with the manual. Additionally, Rudd, like Campos, performed well – though not perfectly – on the two FST's performed on camera. There, the trial court found that the officer's decision to administer the HGN test off-camera and the other tests on-camera called into question whether he

---

[27] See Appendix A, at 12.
[28] *State v. Rudd*, 255 S.W.3d 293 (Tex. App.-Waco 2008, pet. ref'd).

9

administered the test properly under the third prong of *Kelly*. The Waco appellate court endorsed that decision, and this Court declined to review it.

In the past the Ninth Court had distinguished Rudd in a case called *Hays v. State*, where a TABC agent was permitted to testify about HGN performed without a video because he did not have a video system in his vehicle.[29] This case, on the other hand, is much more akin to *Rudd*. The officer had video, could have administered on camera safely, and the context clues of the video indicate that taking the citizen off camera was intentional. While the procedural posture is different, this represents a serious constitutional issue and given the conduct, Campos, like Rudd, was deprived of due process by the officer hiding the ball on the only scientific test he can administer in the field.

In the present case the Beaumont Court of Appeals correctly points out that *Rudd* involved a trial court granting the defendant's motion to suppress the HGN test.[30] However, the Beaumont Court states that the trial court in *Rudd* simply determined that the officer lacked credibility to and failed to properly perform the test. But the *Rudd* opinion clearly states that the trial court "found his credibility to be lacking on this issue because of his failure to have Rudd perform the HGN test on video"[31] and that the "State failed to prove that Trooper Nolley properly administered the HGN test to Rudd."[32] These distinctions are significant. The trial court in *Rudd* did not simply think that the trooper was lying or that he did the test wrong. The Beaumont Court brushes off the *Rudd* decision as a mere credibility and abuse-of-discretion case while ignoring its

---

[29] *Hays v. State*, unpublished opinion, No. 09-08-00302-CR, 2009.
[30] *See* Appendix A, at 11.
[31] *Rudd*, 255 S.W. 3d at 301.
[32] *Id.*

10

underlying rationale based on *Kelly*. And while it is true that the present case and the *Rudd* case are procedurally distinguishable, they are factually indistinguishable. The conflicting opinions of these courts of appeals provide this Court with an opportunity to address the serious constitutional and evidentiary issues raised by officers performing certain tests on citizens "off-camera" to avoid scrutiny at trial of the accused.

## CONCLUSION

This Court should grant Campos a new trial based on the fundamental flaws in this case. The police officers making the arrest intentionally administered a key field sobriety test off-camera to avoid scrutiny at trial. The trial court erred by admitting the results of that test despite the concealment and allowed the jurors to hear testimony regarding the only test that Campos allegedly failed outright. Additionally, this Court should remand for a new trial because, absent the HGN testimony, there would have been little if any evidence sufficient to warrant a conviction.

## PRAYER FOR RELIEF

Campos asks the Court to grant review of this matter to address and correct the errors of the Trial Court and the Court of Appeals. Campos specifically requests the Court, upon review, to reverse this cause and render, as to the issue of insufficient evidence, or remand the case to the trial court for a new trial.

Respectfully submitted,

*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz
The Gertz Law Firm
2630 Liberty
Beaumont, TX 77702

11

Tel:  (409) 833-6400
Fax:  (409) 833-6401
Texas Bar. No. 24048489

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 9.4(i)1, there are 2,893 words including endnotes and footnotes.

*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz

## CERTIFICATE OF SERVICE

This is to certify that on December 7, 2015, a true and correct copy of the above and foregoing document was served on the Jefferson County District Attorney's Office, 1001 Pearl Street, 3rd Floor, Beaumont, Texas.

*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz