PD-1261-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/26/2015 3:49:00 PM
Accepted 10/27/2015 4:48:47 PM
ABEL ACOSTA
CLERK

No. _____ **PD-1261-15**

In The

Court of Criminal Appeals

Of The State of Texas

Austin, Texas

_____

MARCUS LOUIS JAMES,
Petitioner

vs.

THE STATE OF TEXAS

_____

# PETITION
# FOR
# DISCRETIONARY REVIEW

_____

COMES NOW MARCUS LOUIS JAMES and petitions this Court to review the judgment affirming his conviction for driving while intoxicated in Cause No. 09-14-00360-CR, in the Ninth Court of Appeals, and in Cause No. 299,715 in the County Court at Law No. 3, Jefferson County, Texas.

FILED IN
COURT OF CRIMINAL APPEALS

October 27, 2015

ABEL ACOSTA, CLERK

# **TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................................ii

INDEX OF AUTHORITIES...........................................................................iii

IDENTITIES OF PARTIES AND COUNSEL……………………………………iv

STATEMENT REGARDING ORAL ARGUMENT…………………………….iv

STATEMENT OF THE CASE…………………………………………...........2

STATEMENT OF PROCEDURAL HISTORY………………………………..2

GROUNDS FOR REVIEW………………………………………………..2

STATEMENT OF FACTS…………………………………………………3

ARGUMENT AND AUTHORITIES…………………………………………..4

CONCLUSION....................................................................................10

PRAYER FOR RELIEF………………………………………………..10

CERTIFICATE OF COMPLIANCE……………………...................................12

CERTIFICATE OF SERVICE........................................................................12

# INDEX OF AUTHORITIES

## Cases

*Arizona v. Youngblood*, 488 U.S. 51, 58, (1988)…………………..………………….....…….4, 5, 7

*Emerson v. State,* 880 S.W.2d 759 (Tex. Crim. App. 1994)……………………………..……..5

*Hays v. State*, unpublished opinion, No. 09-08-00302-CR, 2009…………………….…………9

*Kelly v. State,* 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992)……………………………5, 6

*Lisenba v. California*, 314 U. S. 219, 236 (1941)……………………………….....………..4

*State v. Rudd*, 255 S.W.3d 293 (Tex. App.-Waco 2008, pet. ref'd)………...………………8,9, 10

*Thomas v. State,* 841 S.W.2d 399, 402 n. 5 (Tex.Crim.App.1992)………….………...……5

## IDENTITY OF PARTIES AND COUNSEL

1.      Petitioner is Marcus Louis James.

2.      Trial and Appellate Counsel for Petitioner is Ryan W. Gertz, 2630 Liberty, Beaumont, TX 77702.

3.      Trial and Appellate counsel for the state was the Jefferson County District Attorney's Office, 1001 Pearl St., Beaumont, TX 77701.

4.      The Trial Court Judge was Hon. Langston Adams, County Court at Law No. 3, Jefferson County, Texas.

## STATEMENT REGARDING ORAL ARGUMENT

James requests oral argument and respectfully submits that oral argument would aid the Court in the disposition of the case as it presents novel questions for consideration.

No. PD-1261-15

In The

Court of Criminal Appeals

Of The State of Texas

Austin, Texas

_____

MARCUS LOUIS JAMES,
Petitioner

vs.

THE STATE OF TEXAS

_____

# PETITION
# FOR
# DISCRETIONARY REVIEW

_____

COMES NOW MARCUS LOUIS JAMES and petitions this Court to review the judgment affirming his conviction for driving while intoxicated in Cause No. 09-14-00360-CR, in the Ninth Court of Appeals, and in Cause No. 299,715 in the County Court at Law No. 3, Jefferson County, Texas. For convenience, the parties will be referred to as "James" and "the State." The reporter's record will be referred to as RR (Volume number) (Page number) and the clerk's record will be referred to as CR (Page number).

1

## STATEMENT OF THE CASE

This Petition seeks redress of the affirmance of James' conviction for driving while intoxicated. On September 11, 2013, James was charged with the offense of driving while intoxicated.[1] On June 17, 2014, after James pled "not guilty," a jury trial commenced.[2] On the next day, James was found guilty of D.W.I.[3] The Judge sentenced James to 180 days in jail, suspended over 18 months, a $2000 fine, and community service.[4] The Ninth Court of Appeals affirmed the conviction on August 26, 2015. The opinion of the Court is attached as Appendix A.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its opinion affirming the conviction on August 26, 2015. No motion for rehearing was filed.

## GROUNDS FOR REVIEW

1. The Court of Appeals erred by failing to address James' *Youngblood* and *Kelly* arguments regarding the officer's intentional act of performing the HGN test off-camera in order to deprive James of the right to challenge the way in which the test was administered.

2. The Ninth Court of Appeals' opinion in this case conflicts with a case out of the Waco Court of Appeals, *State v. Rudd*, 255 S.W.3d 293 (Tex. App. – Waco 2008, pet. Ref'd).

---

[1] CR 8.
[2] CR 177
[3] CR 26
[4] RR 3, 30

2

## STATEMENT OF FACTS

James was pulled over for speeding while driving in Port Arthur, Texas. During the course of the traffic stop, Detective Jeremy Bearden began initiating field sobriety testing. Ultimately, James was arrested for driving while intoxicated.

Both Bearden and his partner, Officer Mesa, made the arrests at the scene. They are, in essence, the DWI Task Force for the Port Arthur Police Department. Bearden testified at trial, but did not testify that James had the smell of alcohol on his breath or person, that he had red, blood-shot, and glassy eyes, or that he was unsteady on his feet. The video clearly reveals that James was not unsteady on his feet.

Instead, Bearden's testimony relied entirely on his administration of the field sobriety tests to conclude that James was intoxicated.[5] Bearden testified that James exhibited six out of six clues on the HGN test.[6] He further testified that James exhibited five out of eight clues on the walk and turn, but he employed improper definitions under the Manual for arriving at that conclusion.[7] Finally, he testified that James exhibited one out of four clues on the one leg stand – a passing score – yet the video plainly shows the one clue noted was not accurate.[8] Nonetheless, James was arrested.

---

[5] RR 2, 93.
[6] RR 2, 81.
[7] RR 2, 130, 139.
[8] RR 2, 130.

Most importantly to this appeal, however, Bearden and his partner, Officer Mesa, intentionally take each citizen off-camera to administer the HGN test and bringing them back on camera to administer the other two field sobriety tests. No rational explanation for this practice was provided.

**ARGUMENT**

The trial court should have excluded the HGN test from evidence. Officer Bearden intentionally administered the HGN test off camera in an effort to avoid scrutiny at trial. James respectfully requests this Court grant review and reverse the Court of Appeal's decision as the admission of the HGN testimony violates fundamental tenants of due process under the circumstances in this case and the Court of Appeals glossed over these constitutional deformities. Without the use of the HGN results, the evidence presented at trial was insufficient to support a verdict of guilt beyond a reasonable doubt. James performed well on the two field sobriety tests that administered on the video tape and thus the jury necessarily placed disproportionate weight of the HGN test results which were not subject to scrutiny.

**REASON FOR REVIEW NUMBER 1:** *The Court of Appeals erred by failing to address James' Youngblood and Kelly arguments regarding the officer's intentional act of performing the HGN test off-camera in order to deprive James of the right to challenge the way in which the test was administered.*

The fundamental fairness requirement of the due process clause imposes upon the police an undifferentiated and absolute duty to retain and to preserve all evidence that might be of conceivable evidentiary significance in a particular prosecution.[9] In this

---

[9] See *Arizona v. Youngblood*, 488 U.S. 51, 58, (1988) (citing *Lisenba v. California*, 314 U. S. 219, 236 (1941)).

4

case, the Court of Appeals glossed over James' constitutional due process arguments under *Youngblood* by essentially stating that Detective Bearden testified that he is an expert and that he conducted the HGN test correctly, and that there was no evidence introduced to indicate that Bearden acted intentionally or in bad faith.[10] Moreover, the Court of Appeals conflated the due process defects with mere evidentiary complaints.

## A. *Arizona v. Youngblood*

In *Youngblood*, the U.S. Supreme Court followed up the landmark decision of *Brady v. Maryland*, to evaluate cases where the exculpatory value of unpreserved evidence is not known or apparent on its face. A *Youngblood* claim involves a showing that potentially exculpatory evidence was not preserved by the police and that the reason for that suppression was the officer's "bad faith."[11] The Supreme Court noted that the question of bad faith turns on the State's knowledge of the exculpatory value of the evidence at the time it was not preserved.[12] This Court has recognized the applicability of *Youngblood* in Texas since 1992.[13]

## B. The HGN Test

As this Court is aware, the HGN test is only reliable when administered properly. In *Emerson v. State,*[14] this Court held that testimony concerning the HGN test is scientific evidence and is subject to the requirements of *Kelly v. State* to be admissible under Rule 702.[15] This Court held in *Kelly* that in order for evidence derived from scientific theory to be considered reliable, "(a) the underlying scientific theory must be

---

[10] See Appendix A, at 8.
[11] *Youngblood*, 488 U.S. at 57.
[12] *Youngblood*, 488 U.S. at 56 fn *.
[13] *Thomas v. State,* 841 S.W.2d 399, 402 n. 5 (Tex.Crim.App.1992)
[14] *Emerson v. State,* 880 S.W.2d 759 (Tex. Crim. App. 1994)
[15] *Emerson,* 880 S.W.2d at 764.

valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question."[16]

Even though nystagmus itself may not be seen on a vehicle mounted dash camera, the Defense and the Court can determine whether an officer held the stimulus at the right height and distance, performed the correct number of passes (minimum of fourteen), and took the correct amount of time for each pass. But, only if the test is administered on camera. If these things were not done correctly, then the test should be excluded.

C. Video Compilation Shows Consistent Practice of Performing HGN Off-Camera

The Court of Appeals also ignored overwhelming evidence in this case showing that the practice of performing the HGN test of camera is both intentional and done in bad faith. The video shows Bearden performing the HGN test on James by his driver side door; and has a second Citizen Accused walk with him from the front of his vehicle, where the camera is aimed, all the way around to his driver side door to administer the HGN test.[17] We can also see his partner do the same thing on two different occasions.[18] Bearden testified at trial that the reason he did not perform the HGN test on camera was due to the fact that there were people standing where he "would normally go to do the HGN."[19] However, the video shows that the other officer and citizens naturally move out of his way when he walks James to the front of his patrol car to perform the walk and turn on camera.[20] He also admits, though, that he knows the video does not record it when he administers the test some where other than the front of his vehicle.[21]

---

[16] *Kelly v. State,* 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992).
[17] See Dash-Cam Video, State's Exhibit 1, at 3:38; 15:50.
[18] See Dash-Cam Video, State's Exhibit 1, at 03:05; 16:50
[19] RR 2, 95
[20] See Dash-Cam Video, State's Exhibit 1, at 5:30.
[21] *See e.g.* RR 2, 108 (admission by Bearden that we could see the administration if he

6

Additionally, though, on a video compilation, created by James' counsel and submitted to the Court during the Motion for New Trial Hearing, Bearden and Mesa are shown intentionally administering the HGN off camera in several other cases where these two officers have done exactly the same thing. The video likewise showed a State Trooper performing the HGN test at the wrong speed, the wrong angle, and the wrong number of passes – thus demonstrating that video evidence subjects an officers administration to appropriate scrutiny under the third prong of *Kelly*.[22] The Court refused to consider this evidence as it relates to their intentional and bad faith efforts to deprive defendants of the ability to scrutinize how they administer the one test this Court considers scientific.

During his testimony Bearden acknowledged, and this is crucial for *Youngblood* analysis, that if he does the HGN on camera, that defense counsel can scrutinize his administration of the test and determine whether or not it conforms with the manual.[23] He further admitted that he has seen officers administer the test incorrectly and acknowledged that, if the test were on camera, another expert could view and critique it.[24] The Court of Appeals completely fails to acknowledge these troubling admissions by Bearden as they relate to bad faith. As the U.S. Supreme Court noted in *Youngblood*, the key to bad faith is whether the State is aware of the exculpatory nature of the evidence at the time of suppression.[25] Bearden's responses indicate that he is clearly aware of the potential exculpatory value of seeing the HGN administration, yet over and over again he and his partner choose to administer it off camera.

---

performed in front of the vehicle where his camera points).
[22] See video offered at hearing on motion for new trial.
[23] RR 2, 113
[24] RR 2, 114.
[25] *Youngblood*, 488 U.S. at 56 fn *.

7

Without the testimony regarding the HGN test results, the evidence presented at trial was insufficient to support a verdict of guilt beyond a reasonable doubt. The entirety of the Court of Appeals analysis regarding Bearden's testimony regarding field sobriety tests – outside of the HGN test - is that James "exhibited clues on both the walk and turn test and the one-leg-stand test."[26] The Court does not address the numerous problems with Bearden's testimony regarding the administration of the walk-and-turn or the one-leg-stand test as outlined in James' brief to the Court of Appeals. There was no evidence presented that James had the smell of alcohol on his breath or person, no evidence that his eyes were red and blood-shot, nor any evidence he was unsteady on his feet. Bearden intentionally administered the test off-camera, then concluded that James had demonstrated six out of six clues on the test. It was the only test where Bearden was able to describe a conclusive "failure" by James and was also the only test whose administration cannot be scrutinized by James's counsel. The trial court's decision to admit the HGN test in this case becomes exceptionally more important and harmful given the weakness of the other evidence presented.

**REASON FOR REVIEW NUMBER 2:** *The Ninth Court of Appeals' opinion in this case conflicts with an opinion of the Waco Court of Appeals, State v. Rudd, 255 S.W.3d 293 (Tex. App. – Waco 2008, pet. Ref'd).*

In *State v. Rudd*,[27] the Waco Court of Appeals upheld the exclusion of HGN evidence because the trooper intentionally administered the HGN test out of the view of the camera and yet made sure the walk and turn and one leg stand were videoed. That is precisely the scenario in the present case. In fact, James would point out that *Rudd* and

---

[26] See Appendix A, at 9.
[27] *State v. Rudd*, 255 S.W.3d 293 (Tex. App.-Waco 2008, pet. ref'd).

this case are factually indistinguishable. In *Rudd*, there was no evidence of slurred speech or the smell of alcohol testified to by the officer. As Bearden did here, the Trooper in Rudd testified that he administered the HGN correctly in accordance with the manual. Additionally, Rudd, like James, performed well – though not perfectly – on the two FST's performed on camera. There, the trial court found that the officer's decision to administer the HGN test off-camera and the other tests on-camera called into question whether he administered the test properly under the third prong of *Kelly*. The Waco appellate court endorsed that decision, and this Court declined to review it.

In the past the Ninth Court had distinguished Rudd in a case called *Hays v. State*, where a TABC agent was permitted to testify about HGN performed without a video because he did not have a video system in his vehicle.[28] This case, on the other hand, is much more akin to *Rudd*. The officer had video, could have administered on camera safely, and the context clues of the video indicate that taking the citizen off camera was intentional. While the procedural posture is different, this represents a serious constitutional issue and given the conduct, James, like Rudd, was deprived of due process by the officer hiding the ball on the only scientific test he can administer in the field.

In the present case the Beaumont Court of Appeals correctly points out that *Rudd* involved a trial court granting the defendant's motion to suppress the HGN test.[29] However, the Beaumont Court states that the trial court in *Rudd* simply determined that the officer lacked credibility to and failed to properly perform the test. But the *Rudd* opinion clearly states that the trial court "found his credibility to be lacking on this issue

---

[28] *Hays v. State*, unpublished opinion, No. 09-08-00302-CR, 2009.
[29] *See* Appendix A, at 8.

9

because of his failure to have Rudd perform the HGN test on video"[30] and that the "State failed to prove that Trooper Nolley properly administered the HGN test to Rudd."[31] These distinctions are significant. The trial court in *Rudd* did not simply think that the trooper was lying or that he did the test wrong. The Beaumont Court brushes off the *Rudd* decision as a mere credibility and abuse-of-discretion case while ignoring its underlying rationale based on *Kelly*. And while it is true that the present case and the *Rudd* case are procedurally distinguishable, they are factually indistinguishable. The conflicting opinions of these courts of appeals provide this Court with an opportunity to address the serious constitutional and evidentiary issues raised by officers performing certain tests on citizens "off-camera" to avoid scrutiny at trial of the accused.

## CONCLUSION

This Court should grant James a new trial based on the fundamental flaws in this case. The police officers making the arrest intentionally administered a key field sobriety test off-camera to avoid scrutiny at trial. The trial court erred by admitting the results of that test despite the concealment and allowed the jurors to hear testimony regarding the only test that James allegedly failed outright. Additionally, this Court should remand for a new trial because, absent the HGN testimony, there would have been little if any evidence sufficient to warrant a conviction.

## PRAYER FOR RELIEF

James asks the Court to grant review of this matter to address and correct the errors of the Trial Court and the Court of Appeals. James specifically requests the Court,

---

[30] *Rudd*, 255 S.W. 3d at 301.
[31] *Id.*

upon review, to reverse this cause and render, as to the issue of insufficient evidence, or remand the case to the trial court for a new trial.

Respectfully submitted,

*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz
The Gertz Law Firm
2630 Liberty
Beaumont, TX 77702
Tel:  (409) 833-6400
Fax:  (409) 833-6401
Texas Bar. No. 24048489

11

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 9.4(i)1, there are 2,590 words including endnotes and footnotes.

*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz

## CERTIFICATE OF SERVICE

This is to certify that on October 26, 2015, a true and correct copy of the above and foregoing document was served on the Jefferson County District Attorney's Office, 1001 Pearl Street, 3rd Floor, Beaumont, Texas.

*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz

## APPENDIX

| Item No. | Description | No. Pages |
|:---:|:---|:---:|
| **1** | **9th Court of Appeals Opinion.** | **10** |
|  |  |  |
|  |  |  |

# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-14-00360-CR
_____

### MARCUS LOUIS JAMES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 3**
**Jefferson County, Texas**
**Trial Cause No. 299715**

## MEMORANDUM OPINION

A jury convicted appellant Marcus Louis James of driving while intoxicated, and the trial judge assessed punishment at a $2000 fine and one hundred eighty days of confinement in the Jefferson County Jail, but suspended imposition of sentence and placed James on probation for eighteen months. In two appellate issues, James challenges the admission into evidence of the police officer's testimony concerning horizontal gaze nystagmus (HGN) testing of James and the

1

legal sufficiency of the evidence without that testimony. We affirm the trial court's judgment.

THE EVIDENCE

Detective Jeremy Bearden of the Port Arthur Police Department testified that he is assigned to the traffic unit, which primarily involves dealing with intoxicated drivers, and he is certified in standardized field sobriety tests. On August 28, 2013, Bearden stopped a white Ford pickup truck driven by James. Bearden explained that he was in the parking lot of a gas station when he saw the white truck and three other vehicles pull up to a flashing red traffic light and heard their engines revving. According to Bearden, the two vehicles in front stopped at the flashing red light and then "took off, . . . kind of like they were racing each other, keeping up with each other. The two vehicles in back went straight through the red light. They didn't stop and wait. They were obviously trying to keep up with the two in the front." Bearden got into his patrol car and began chasing the vehicles, and he eventually caught up with them as they were pulling into a parking lot and detained all four suspects.

Bearden testified that he began speaking with the four subjects, and two other officers, Officers Meza and Dinger, arrived. Meza performed field sobriety testing on two of the subjects, and Bearden performed standardized field sobriety

2

testing on the other two subjects. Bearden began his testing of James by administering the HGN test, and he testified that James exhibited six out of six possible clues. Bearden explained the three portions of the standardized HGN test: (1) checking for smooth pursuit, which involves asking subjects to follow a light at the end of a stylus with their eyes while keeping their heads still, and watching for twitching of the eyes; (2) the maximum duration test, which involves bringing the light all the way out, holding it for four to eight seconds, and having subjects focus on it the entire time that the light is extended, again checking for twitching of the eyes; and (3) "onset prior to 45 degrees[,]" which involves staying twelve inches from subjects' faces at a forty-five-degree angle, and watching for twitching of the eyes. Bearden testified that each eye is checked twice on each individual test, so there is one potential clue for each eye on each of the three HGN tests. According to Bearden, James exhibited six clues.

Bearden then administered the walk and turn test to James. Bearden explained that the walk and turn test involves having a subject walk along a straight line, heel to toe, for nine steps, turn, and take nine steps back. Bearden testified that he gave James the instructions for the test three times and demonstrated the test twice. Bearden next administered the one-leg stand after giving James instructions. Bearden explained that the one-leg stand involves

3

having a subject raise his foot about six inches off the ground with his hands by his side, keeping both legs straight, and looking down at the foot and counting for thirty seconds. Bearden testified that, "[o]n a one-leg stand you look for if they put their foot down, sway, use their arms for balance, or if they hop trying to stand up[,]" and he explained that these things are clues as to whether the person is intoxicated. According to Bearden, each of the field sobriety tests led him to conclude that James was intoxicated. The State then played a video recording of Bearden's encounter with James for the jury.

Bearden explained that the HGN test was not performed on camera because Bearden had stopped four subjects, and another officer had two of the subjects standing where he would normally have performed the HGN test on James, so Bearden elected to simply perform HGN testing of James beside the truck where James was already standing. Bearden testified that his training enables him to identify whether a subject is intoxicated. According to Bearden, James refused to submit to a breath test, and James admitted that he had consumed several shots and two beers that night.

Bearden explained that there is no policy or practice about placing a subject in front of the police vehicle to perform the HGN test. Bearden testified that he does not pay attention to where he administers HGN testing, and HGN clues

cannot be seen with a camera, but he does insure that the walk and turn test and the one-leg stand are on video because the clues are visible on video. According to Bearden, James started the walk and turn test too early and failed to maintain his position, both of which are clues. James also turned in the wrong direction, stopped while he was walking, and used his arms for balance. With respect to the one-leg stand test, Bearden explained that James swayed during the test, which is one of the four possible clues. After concluding the field sobriety testing, Bearden arrested James for driving while intoxicated. The State rested at the conclusion of Bearden's testimony. The jury found Bearden guilty, and the trial judge assessed punishment.

## ISSUES ONE AND TWO

In issue one, James challenges the admission into evidence[1] of the police officer's testimony concerning the HGN testing of James. In issue two, James challenges the legal sufficiency of the evidence without the testimony regarding the HGN testing. Specifically, James contends Bearden deliberately and in bad faith conducted the HGN test in a location where it could not be captured on video,

---

[1]James filed a pretrial motion requesting exclusion of testimony regarding the HGN test administration and results, alleging that (1) Bearden intentionally administered the test off camera to prevent counsel from determining whether the examination was properly administered; (2) without reliability evidence, the test cannot meet the requirements for admission of expert testimony; and (3) the testimony "is extremely prejudicial and yet has little probative value."

and that the evidence is therefore unreliable because James's counsel could not review the manner in which Bearden administered the test. We address issues one and two together.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The fact finder is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the fact finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 900 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

We review a trial court's ruling admitting evidence for abuse of discretion, and we must uphold the trial court's ruling if it falls "within the zone of reasonable disagreement." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *see also Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court errs when its ruling admitting the evidence "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

Rule 702 of the Texas Rules of Evidence states that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. The Texas Court of Criminal Appeals has held that testimony concerning the HGN test is scientific evidence and is therefore admissible under Rule 702 if it meets the requirements set forth in *Kelly v. State*, 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992). *Emerson v. State*, 880 S.W.2d 759, 764 (Tex. Crim. App. 1994). As discussed above, James contends the HGN testing evidence was inadmissible because the HGN test was conducted, intentionally and in bad faith, in a location where it could not be captured on video, thereby violating his due process rights.

The jury heard evidence that Bearden testify that he is assigned to the traffic unit and is certified in conducting standardized field sobriety tests. Bearden explained in detail the procedure for conducting the HGN, as well as the types of clues a subject may exhibit during HGN testing, and he testified that he followed the standardized procedures in his HGN testing of James. The jury also heard Bearden explain why he did not perform the HGN testing on camera, and that there is no policy or practice about placing a subject in front of the police vehicle to perform the HGN testing. Bearden testified that HGN clues cannot be seen with a camera. No evidence was introduced to indicate that Bearden acted intentionally or in bad faith when deciding to administer the HGN test out of the camera's view.

In support of his argument, James cites *State v. Rudd*, 255 S.W.3d 293 (Tex. App.—Waco 2008, pet. ref'd). However, *Rudd* did not hold that the failure to videotape the HGN test bars its admission into evidence. *Id*. at 301-02. Rather, the *Rudd* court merely upheld the trial court's order granting a motion to suppress HGN testimony because the trial court had determined that the officer who administered the HGN test lacked credibility and failed to properly perform the test. *Id*. at 301. James cites no authorities holding that the lack of a video recording renders evidence of HGN testing inadmissible, or that lack of a video recording violates his right to due process, and we are aware of none. For all of these reasons,

8

the trial court did not abuse its discretion by admitting Bearden's testimony regarding the HGN testing into evidence. We overrule issue one.

We turn now to the legal sufficiency of the evidence. The State had the burden to prove that Bearden was intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2014). The jury heard evidence that Bearden stopped James and three other subjects who appeared to be racing. Bearden testified that James exhibited six out of a possible six clues on the HGN test , and he also exhibited clues on both the walk and turn test and the one-leg stand. In addition, the jury heard testimony that James told Bearden he had consumed several shots and two beers that evening, and that James refused to submit to a breath test. The jury also viewed a video of James's performance of the walk and turn and one-leg stand tests. As we have previously explained, the trial court did not err by admitting evidence of the HGN testing. Regardless of whether or not the HGN evidence is considered, we conclude that a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13; *Penagraph*, 623 S.W.2d at 343. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on July 27, 2015
Opinion Delivered August 26, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.