PD-1586-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/7/2015 3:56:37 PM
Accepted 12/10/2015 5:02:53 PM
ABEL ACOSTA
CLERK

**No. PD-1586-15**

In The

Court of Criminal Appeals

Of The State of Texas

Austin, Texas

---

CHRISTOPHER JOSEPH CAMPOS,
Petitioner

vs.

THE STATE OF TEXAS

---

**PETITION
FOR
DISCRETIONARY REVIEW**

---

COMES NOW CHRISTOPHER JOSEPH CAMPOS and petitions this Court to review the judgment affirming his conviction for driving while intoxicated in Cause No. 09-14-00481-CR, in the Ninth Court of Appeals, and in Cause No. 299,714 in the County Court at Law No. 2, Hon. Lupe Flores presiding, Jefferson County, Texas. For convenience, the parties will be referred to as "Campos" and "the State." The reporter's record will be referred to as RR (Volume number) (Page number) and the clerk's record will be referred to as CR (Page number).

FILED IN
COURT OF CRIMINAL APPEALS

December 10, 2015

ABEL ACOSTA, CLERK

i

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................ii

INDEX OF AUTHORITIES.........................................................................iii

IDENTITIES OF PARTIES AND COUNSEL………………………………iv

STATEMENT REGARDING ORAL ARGUMENT…………………………..iv

STATEMENT OF THE CASE………………………………………............2

STATEMENT OF PROCEDURAL HISTORY………………………………..3

GROUNDS FOR REVIEW………………………………………………….3

STATEMENT OF FACTS……………………………………………………3

ARGUMENT AND AUTHORITIES………………………………………..5

CONCLUSION..........................................................................................11

PRAYER FOR RELIEF……………………………………………………..11

CERTIFICATE OF COMPLIANCE…………………...................................12

CERTIFICATE OF SERVICE.....................................................................12

# INDEX OF AUTHORITIES

## Cases

*Arizona v. Youngblood*, 488 U.S. 51, 58, (1988)…………………..………………...…...… 5, 6

*Emerson v. State,* 880 S.W.2d 759 (Tex. Crim. App. 1994)…………………………….……..6

*Hays v. State*, unpublished opinion, No. 09-08-00302-CR, 2009……………………………  10

*Kelly v. State,* 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992)………………………….... 6

*Lisenba v. California*, 314 U. S. 219, 236 (1941)…………………………………......……..5

*State v. Rudd*,  255 S.W.3d 293 (Tex. App.-Waco 2008, pet. ref'd)………...……………...9, 10

*Thomas v. State,* 841 S.W.2d 399, 402 n. 5 (Tex.Crim.App.1992)…………..………...……6

**IDENTITY OF PARTIES AND COUNSEL**

1. Petitioner is Christopher Joseph Campos.

2. Trial and Appellate Counsel for Petitioner is Ryan W. Gertz, 2630 Liberty, Beaumont, TX 77702.

3. Trial and Appellate counsel for the state was the Jefferson County District Attorney's Office, 1001 Pearl St., Beaumont, TX 77701.

4. The Trial Court Judge was Hon. Lupe Flores, County Court at Law No. 2, Jefferson County, Texas.

**STATEMENT REGARDING ORAL ARGUMENT**

Campos requests oral argument and respectfully submits that oral argument would aid the Court in the disposition of the case as it presents novel questions for consideration.

**No. PD-1586-15**

In The

Court of Criminal Appeals

Of The State of Texas

Austin, Texas

---

CHRISTOPHER JOSEPH CAMPOS,
Petitioner

vs.

THE STATE OF TEXAS

---

**PETITION
FOR
DISCRETIONARY REVIEW**

---

COMES NOW CHRISTOPHER JOSEPH CAMPOS and petitions this Court to review the judgment affirming his conviction for driving while intoxicated in Cause No. 09-14-00481-CR, in the Ninth Court of Appeals, and in Cause No. 299,714 in the County Court at Law No. 2, Hon. Lupe Flores presiding, Jefferson County, Texas. For convenience, the parties will be referred to as "Campos" and "the State." The reporter's record will be referred to as RR (Volume number) (Page number) and the clerk's record will be referred to as CR (Page number).

1

## STATEMENT OF THE CASE

On September 11, 2013, Campos was charged with the offense of driving while intoxicated.[1] On October 22, 2014, Campos filed a motion to exclude testimony regarding HGN test results, which was denied.[2] On October 22, 2014, after Campos pled "not guilty," a jury trial commenced.[3] On October 23, 2014, Campos was found guilty of D.W.I.[4] The Judge sentenced Campos to 90 days in jail, suspended for one year, a $1000 fine and community service.[5] The Ninth Court of Appeals affirmed the conviction on November 2, 2015. The opinion of the Court is attached as Appendix A.

Port Arthur Police detained and ultimately arrested four individuals on the night of August 28, 2013 for driving while intoxicated. Two of the four obtained not guilty verdicts from juries- Terry Copenhaver, in the County Court at Law No. 3 on March 18, 2014; and Patrick Griffin, in the County Court at Law No. 2 on July 10, 2015. The other two cases, State v. Christopher Campos (present case) and State v. Marcus James resulted in convictions from a jury. Both are on appeal to this Court. The Court should consider these two as companion cases because they stem from the same set of facts and have a key common constitutional and evidentiary issue: does the practice of intentionally taking subjects off-camera to administer the Horizontal Gaze Nystagmus test deprive the citizen of due process rights?

---

[1] CR 8.
[2] CR 26
[3] RR 2, 1
[4] CR 17
[5] RR 3, 198

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals rendered its opinion affirming the conviction on November 2, 2015. No motion for rehearing was filed.

## GROUNDS FOR REVIEW

1.     The Court of Appeals erred by failing to address Campos' *Youngblood* and *Kelly* arguments regarding the officer's intentional act of performing the HGN test off-camera in order to deprive Campos of the right to challenge the way in which the test was administered.

2.     The Ninth Court of Appeals' opinion in this case conflicts with a case out of the Waco Court of Appeals, *State v. Rudd*, 255 S.W.3d 293 (Tex. App. – Waco 2008, pet. Ref'd).

## STATEMENT OF FACTS

Campos was pulled over for speeding while driving in Port Arthur, Texas. During the course of the traffic stop, Officer Rogelio Meza began initiating field sobriety testing. Ultimately, Campos was arrested for driving while intoxicated.

Both Officer Meza and his partner, Detective Bearden, made the arrests at the scene. They are, in essence, the DWI Task Force for the Port Arthur Police Department. Both Meza and Bearden testified at trial.

Meza's testimony relied entirely on his administration of the field sobriety tests to conclude that Campos was intoxicated.[6] Meza testified that Campos exhibited six out of six clues on the HGN test.[7] He further testified that he originally wrote in his report that

---

[6] RR 3, 35.
[7] RR 3, 134

3

Campos exhibited only one out of eight clues on the walk and turn- a passing score- but then said after seeing the video he saw four out of eight clues.[8] He testified that Campos stepped off the line and stopped while walking, when the video clearly shows he did neither of these.[9] Additionally, he testified that Campos did an improper turn by not taking "a series of small steps," but admits that he never instructed Campos to turn by taking a series of small steps.[10] Finally, he testified that Campos exhibited two out of four clues on the one leg stand, yet the video plainly shows Meza demonstrated the test incorrectly- with his toe pointed up instead of foot parallel to the ground- which makes the test more difficult.[11] Moreover, Meza also failed to instruct him, as he is supposed to under the NHTSA Manual, to keep his foot parallel to the ground.[12] Nonetheless, Campos was arrested.

Most importantly to this appeal, however, Meza and Bearden demonstrate during this arrest their practice of intentionally taking each citizen off-camera to administer the HGN test and bringing them back on camera to administer the other two field sobriety tests. No rational explanation for this practice was provided.[13] The only logical conclusion is that it is done to prevent defendants from critiquing the manner in which the test was administered in order to have the results excluded under the third prong of *Kelly*. This case provides a unique opportunity for the Court to see the practice four times in one stop.

---

[8] RR 3, 29-31, 39-40
[9] RR 3, 39, See Meza Dash Cam, State's Exhibit 2, at 20:05.
[10] RR 3, 74, 125-26
[11] RR 3, 131-132 ; Meza Dash cam, state's Exhibit 2, at 20:20.
[12] *Id.*
[13] RR 3, 49

4

**ARGUMENT**

The trial court should have excluded the HGN test from evidence. Officer Meza intentionally administered the HGN test off camera in an effort to avoid scrutiny at trial. Campos respectfully requests this Court grant review and reverse the Court of Appeal's decision as the admission of the HGN testimony violates fundamental tenants of due process under the circumstances in this case and the Court of Appeals glossed over these constitutional deformities Without the use of the HGN results, the evidence presented at trial was insufficient to support a verdict of guilt beyond a reasonable doubt. Campos performed well on the walk and turn test and was given neither the proper instruction nor the proper demonstration on the one-leg-stand test, the two field sobriety tests that administered on the video tape and thus the jury necessarily placed disproportionate weight of the HGN test results which were not subject to scrutiny.

**REASON FOR REVIEW NUMBER 1:** *The Court of Appeals erred by failing to address Campos' Youngblood and Kelly arguments regarding the officer's intentional act of performing the HGN test off-camera in order to deprive Campos of the right to challenge the way in which the test was administered.*

The fundamental fairness requirement of the due process clause imposes upon the police an undifferentiated and absolute duty to retain and to preserve all evidence that might be of conceivable evidentiary significance in a particular prosecution.[14] In this case, the Court of Appeals glossed over Campos' constitutional due process arguments under *Youngblood* by essentially stating that Detective Meza testified that he is an expert and that he conducted the HGN test correctly, and that there was no evidence introduced

---

[14] See *Arizona v. Youngblood*, 488 U.S. 51, 58, (1988) (citing *Lisenba v. California*, 314 U. S. 219, 236 (1941)).

5

to indicate that Meza acted intentionally or in bad faith.[15] Moreover, the Court of Appeals conflated the due process defects with mere evidentiary complaints.

## A. *Arizona v. Youngblood*

In *Youngblood*, the U.S. Supreme Court followed up the landmark decision of *Brady v. Maryland*, to evaluate cases where the exculpatory value of unpreserved evidence is not known or apparent on its face. A *Youngblood* claim involves a showing that potentially exculpatory evidence was not preserved by the police and that the reason for that suppression was the officer's "bad faith."[16] The Supreme Court noted that the question of bad faith turns on the State's knowledge of the exculpatory value of the evidence at the time it was not preserved.[17] This Court has recognized the applicability of *Youngblood* in Texas since 1992.[18]

## B. The HGN Test

As this Court is aware, the HGN test is only reliable when administered properly. In *Emerson v. State,*[19] this Court held that testimony concerning the HGN test is scientific evidence and is subject to the requirements of *Kelly v. State* to be admissible under Rule 702.[20] This Court held in *Kelly* that in order for evidence derived from scientific theory to be considered reliable, "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question."[21]

---

[15] See Appendix A, at 10-11.
[16] *Youngblood*, 488 U.S. at 57.
[17] *Youngblood*, 488 U.S. at 56 fn *.
[18] *Thomas v. State,* 841 S.W.2d 399, 402 n. 5 (Tex.Crim.App.1992)
[19] *Emerson v. State,* 880 S.W.2d 759 (Tex. Crim. App. 1994)
[20] *Emerson,* 880 S.W.2d at 764.
[21] *Kelly v. State,* 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992).

6

Even though nystagmus itself may not be seen on a vehicle mounted dash camera, the Defense and the Court can determine whether an officer held the stimulus at the right height and distance, performed the correct number of passes (minimum of fourteen), and took the correct amount of time for each pass. But, only if the test is administered on camera. If these things were not done correctly, then the test should be excluded.

C. Video Compilation Shows Consistent Practice of Performing HGN Off-Camera

The Court of Appeals also ignored overwhelming evidence in this case showing that the practice of performing the HGN test of camera is both intentional and done in bad faith. Upon detaining Campos, Meza escorted Campos from in front of Bearden's patrol vehicle (clearly in the view of the camera) all the way around to the driver's side of his (Meza's) patrol vehicle- so as to be outside of the view of both dash cams- and began to administer the Horizontal Gaze Nystagmus test to him.[22] The video indicates that Bearden's light bar was switched off at 1 minute and 43 seconds of the video, and that neither Meza's nor the other officer's light bars were ever turned on, thus concerns about the light bar would not provide a rationale for administering the test outside of the camera's view. Additionally, all of the testing occurred in the parking lot of the Waffle House, with multiple clearly marked patrol cars blocking the scene, and thus officer and citizen safety were not reasons to administer the HGN off-camera.

Additionally, though, on a video compilation, created by Campos' counsel and submitted to the Court during the Motion to Suppress Hearing, Bearden and Mesa are shown intentionally administering the HGN off camera in several other cases where these two officers have done exactly the same thing. The video likewise showed a State

[22] *See* States Exhibit 1, Bearden Dash cam, at 16:45

7

Trooper performing the HGN test at the wrong speed, the wrong angle, and the wrong number of passes – thus demonstrating that video evidence subjects an officers administration to appropriate scrutiny under the third prong of *Kelly*.[23] The Court refused to consider this evidence as it relates to their intentional and bad faith efforts to deprive defendants of the ability to scrutinize how they administer the one test this Court considers scientific.

Meza's trial testimony is also enlightening as to bad faith. He offers no explanation for taking Campos off camera to perform the HGN test. Meza acknowledges, though, and this is crucial for *Youngblood* analysis, that if he does the HGN on camera, that defense counsel can go through the test with him and determine whether or not he administered it in accordance with the manual.[24] And he admits that Campos was actually standing almost in front of his patrol vehicle and Mesa led him all the way around the back of the vehicle to do the test instead of walking in front of the video camera and doing the test on camera.[25] As the U.S. Supreme Court noted in *Youngblood*, the key to bad faith is whether the State is aware of the exculpatory nature of the evidence at the time of suppression.[26] Meza's responses indicate that he is clearly aware of the potential exculpatory value of seeing the HGN administration, yet over and over again he and his partner choose to administer it off camera.

Without the testimony regarding the HGN test results, the evidence presented at trial was insufficient to support a verdict of guilt beyond a reasonable doubt. The entirety of the Court of Appeals analysis regarding Meza's testimony regarding field sobriety

---

[23] *See* Defendant's Bill of Review Exhibit 2.
[24] RR 3, 134-36.
[25] RR 3, 67
[26] *Youngblood*, 488 U.S. at 56 fn *.

tests – outside of the HGN test - is that Campos exhibited clues on both the walk and turn test and the one-leg-stand test.[27] The Court does not address the numerous problems with Meza's testimony regarding the administration of the walk-and-turn or the one-leg-stand test as outlined in Campos' brief to the Court of Appeals. Meza intentionally administered the test off-camera, then concluded that Campos had demonstrated six out of six clues on the test. It was the only test where Meza was able to describe a conclusive "failure" by Campos and was also the only test whose administration cannot be scrutinized by Campos' counsel. The trial court's decision to admit the HGN test in this case becomes exceptionally more important and harmful given the weakness of the other evidence presented.

**REASON FOR REVIEW NUMBER 2:** *The Ninth Court of Appeals' opinion in this case conflicts with an opinion of the Waco Court of Appeals, State v. Rudd, 255 S.W.3d 293 (Tex. App. – Waco 2008, pet. Ref'd).*

In *State v. Rudd,*[28] the Waco Court of Appeals upheld the exclusion of HGN evidence because the trooper intentionally administered the HGN test out of the view of the camera and yet made sure the walk and turn and one leg stand were videoed. That is precisely the scenario in the present case. In fact, Campos would point out that *Rudd* and this case are factually indistinguishable. As Meza did here, the Trooper in Rudd testified that he administered the HGN correctly in accordance with the manual. Additionally, Rudd, like Campos, performed well – though not perfectly – on the two FST's performed on camera. There, the trial court found that the officer's decision to administer the HGN test off-camera and the other tests on-camera called into question whether he

---

[27] See Appendix A, at 12.
[28] *State v. Rudd*, 255 S.W.3d 293 (Tex. App.-Waco 2008, pet. ref'd).

9

administered the test properly under the third prong of *Kelly*. The Waco appellate court endorsed that decision, and this Court declined to review it.

In the past the Ninth Court had distinguished Rudd in a case called *Hays v. State*, where a TABC agent was permitted to testify about HGN performed without a video because he did not have a video system in his vehicle.[29] This case, on the other hand, is much more akin to *Rudd*. The officer had video, could have administered on camera safely, and the context clues of the video indicate that taking the citizen off camera was intentional. While the procedural posture is different, this represents a serious constitutional issue and given the conduct, Campos, like Rudd, was deprived of due process by the officer hiding the ball on the only scientific test he can administer in the field.

In the present case the Beaumont Court of Appeals correctly points out that *Rudd* involved a trial court granting the defendant's motion to suppress the HGN test.[30] However, the Beaumont Court states that the trial court in *Rudd* simply determined that the officer lacked credibility to and failed to properly perform the test. But the *Rudd* opinion clearly states that the trial court "found his credibility to be lacking on this issue because of his failure to have Rudd perform the HGN test on video"[31] and that the "State failed to prove that Trooper Nolley properly administered the HGN test to Rudd."[32] These distinctions are significant. The trial court in *Rudd* did not simply think that the trooper was lying or that he did the test wrong. The Beaumont Court brushes off the *Rudd* decision as a mere credibility and abuse-of-discretion case while ignoring its

---

[29] *Hays v. State*, unpublished opinion, No. 09-08-00302-CR, 2009.
[30] *See* Appendix A, at 11.
[31] *Rudd*, 255 S.W. 3d at 301.
[32] *Id.*

10

underlying rationale based on *Kelly*. And while it is true that the present case and the *Rudd* case are procedurally distinguishable, they are factually indistinguishable. The conflicting opinions of these courts of appeals provide this Court with an opportunity to address the serious constitutional and evidentiary issues raised by officers performing certain tests on citizens "off-camera" to avoid scrutiny at trial of the accused.

## CONCLUSION

This Court should grant Campos a new trial based on the fundamental flaws in this case. The police officers making the arrest intentionally administered a key field sobriety test off-camera to avoid scrutiny at trial. The trial court erred by admitting the results of that test despite the concealment and allowed the jurors to hear testimony regarding the only test that Campos allegedly failed outright. Additionally, this Court should remand for a new trial because, absent the HGN testimony, there would have been little if any evidence sufficient to warrant a conviction.

## PRAYER FOR RELIEF

Campos asks the Court to grant review of this matter to address and correct the errors of the Trial Court and the Court of Appeals. Campos specifically requests the Court, upon review, to reverse this cause and render, as to the issue of insufficient evidence, or remand the case to the trial court for a new trial.

Respectfully submitted,

*/s/ Ryan W. Gertz*

_____
Ryan W. Gertz
The Gertz Law Firm
2630 Liberty
Beaumont, TX 77702

11

Tel: (409) 833-6400
Fax: (409) 833-6401
Texas Bar. No. 24048489

## CERTIFICATE OF COMPLIANCE

In accordance with Rule 9.4(i)1, there are 2897 words including endnotes and footnotes.


*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz


## CERTIFICATE OF SERVICE

This is to certify that on December 7, 2015, a true and correct copy of the above

and foregoing document was served on the Jefferson County District Attorney's Office,

1001 Pearl Street, 3rd Floor, Beaumont, Texas.

*/s/ Ryan W. Gertz*

_____

Ryan W. Gertz

# APPENDIX

| Item No. | Description | No. Pages |
|---|---|---|
| 1 | **9th Court of Appeals Opinion.** | 12 |
|  |  |  |
|  |  |  |

# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-14-00481-CR
_____

### CHRISTOPHER CAMPOS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law No. 2**
**Jefferson County, Texas**
**Trial Cause No. 299714**

## MEMORANDUM OPINION

A jury convicted appellant Christopher Campos of driving while intoxicated, and the trial judge assessed punishment at a $1000 fine and ninety days of confinement in the Jefferson County Jail, but suspended imposition of sentence and placed Campos on probation for one year. In two appellate issues, Campos challenges the admission into evidence of the police officer's testimony concerning horizontal gaze nystagmus (HGN) testing of Campos and the legal sufficiency of the evidence without that testimony. We affirm the trial court's judgment.

1

THE EVIDENCE

Detective Jeremy Bearden of the Port Arthur Police Department testified that he is certified in conducting standardized field sobriety tests and is also a certified drug recognition expert. On August 28, 2013, Bearden saw four vehicles pull up to a blinking red traffic light. According to Bearden, the two vehicles in front stopped at the flashing red light and then "the two vehicles in front accelerated pretty quick[ly]; you know, trying to keep up with each other. The two vehicles in back, completely disregarded the flashing red light, also trying to keep up with the front two." Bearden testified that the four vehicles were racing. Bearden got into his patrol car and began pursuit. One of the vehicles was a white Ford pickup truck driven by Campos. Bearden caught up to the vehicles, and all four suspects eventually pulled into the Waffle House parking lot. Officer Rogelio Meza of the Port Arthur Police Department responded to the scene.

Bearden testified that standardized field sobriety tests include the HGN test, walk and turn, and one-leg stand. Bearden explained that nystagmus is the involuntary jerking of the eyes that occurs when a stimulus is moved across the subject's face. Bearden testified, "I make sure that they can see the stimulus that I'm using and then I let them know just follow it with their eyes and their eyes only; not to move their head. Once they understand that, then I start. . . . I always

check for equal pupil size and resting nystagmus." Bearden explained that if he does not observe resting nystagmus in the subject, he then checks for equal tracking (whether both eyes follow in the same direction) and if there is equal tracking, he checks for lack of smooth pursuit. According to Bearden, two clues exist if both eyes lack smooth pursuit. Bearden testified that he then checks for "distinct and sustained nystagmus at maximum deviation[,]" which means

> you bring their eye out to where the colored part is the only thing you see . . . and you hold that out anywhere from four to eight seconds. And . . . if that clue is actually present, you'll see their eye begin to start jerking back and forth; and again, you'll check the right and left eye twice. If they have it, each eye will be one clue.

Bearden explained that the next thing he looks for is nystagmus onset prior to forty-five degrees, and he explained that a forty-five degree angle is around the shoulder area on most people, "and if you start seeing nystagmus before you get out to that 45-degree angle, that will count as a clue. And again, you'll check each eye twice[.]" Bearden testified that exhibiting four out of six clues on the HGN test is a sign of intoxication, as is exhibiting two to four of eight clues on the walk and turn or two out of four clues on the one leg stand. Bearden testified that he was not the officer who administered the standardized field sobriety tests to Campos. The video recording from Bearden's patrol unit was admitted into evidence as State's exhibit one and was played for the jury.

3

According to Bearden, the walk and turn test is a divided attention test that involves asking the subject "to walk heel/toe for nine steps, turn, and take nine heel/toe steps back." Bearden testified that there are eight possible clues in the walk and turn test. Bearden explained that the one leg stand test involves instructing the subject to take one foot, lift it about six inches off the ground, hands by his sides, with his toe pointed, and the subject is instructed to look down at his foot and count until instructed to stop. Bearden testified that there are four clues in the one leg stand: putting the foot down, using the arms for balance, swaying, or hopping.

Officer Meza testified that he is certified in standardized field sobriety testing, which consists of the HGN test, walk and turn test, and the one leg stand test. Meza testified that he is also certified as a drug recognition expert. On August 28, 2013, Meza and Bearden were each operating marked patrol units when they saw two vehicles approach the intersection, and the vehicles "took off at a high rate of speed, spinning their tires, going southbound. It appeared like they were racing each other." Meza testified that two vehicles behind those vehicles ran through the red light. Bearden pursued the suspects, and when he advised Meza that he had found the subjects, Meza responded to the scene. Bearden gave Meza instructions regarding who was driving which car, and Meza began speaking to the four

4

drivers. Meza ultimately dealt with two of the drivers, one of whom was Campos, and Bearden dealt with the other two.

Meza testified that Campos had slurred speech, bloodshot eyes, and a strong odor of alcoholic beverage on his breath. Campos told Meza that he had consumed three beers. Meza administered the HGN test, walk and turn, and one leg stand to Campos. Meza's in-car video recorder captured Meza's encounter with Campos, and the recording was admitted as State's exhibit two and played for the jury. Meza explained that he performed the HGN test "off to the side where you can't see it[,]" but the walk and turn and one leg stand were performed on camera. Meza explained that Campos was beside the vehicle during the HGN test. Outside the presence of the jury, Meza testified that there was "[n]o reason" why he performed the HGN testing off camera, and he explained that he administered the HGN test to Campos as he had been trained to do, and he would not have done the HGN testing differently if he had performed the test on camera.

Meza testified that he administers the HGN test by having the subject put his feet together, with his arms at his sides, and positions the stimulus approximately twelve to fifteen inches from the subject's nose and checks for resting nystagmus, equal pupil size, equal tracking, lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation, and vertical gaze nystagmus. Meza testified that

5

he performed the HGN testing of Campos in accordance with his training. Meza explained that there are a total of six clues, and Campos exhibited six clues.

Meza explained that when he administers the walk and turn test, he instructs the subject to place his left foot on the line, place the right foot directly in front of it, touching heel to toe, and to maintain that position until he gives further instructions. Meza testified that he then asks the subject to take nine heel/toe steps forward, turn, and take nine heel/toe steps back, and he then demonstrates and instructs the subject to keep his arms at his sides, look at his feet at all times, count his steps out loud, and not to stop until he has completed the test. Meza explained that he looks for eight clues during the walk and turn test: inability to maintain balance while listening to instructions, steps off the line, does not touch heel to toe, incorrect number of steps, uses arms for balance, improper turn, stops while walking, and starts too soon.

Meza testified that when he administered the walk and turn test to Campos, the only clue he noted on his report was that Campos could not maintain balance while receiving instructions. Meza explained that when he reviewed the video, he also observed that Campos made an improper turn, stepped off the line, and stopped while walking. Meza explained that exhibiting two or more clues points to intoxication. When asked why only one clue was listed in his report, Meza

testified, "It was . . . a tough night, if you could imagine we had four with DWI's at once. We had a lot of paperwork. We had a lot of things we had to compile. We were just going back and forth; and it was just a lot of stuff to take in." Meza testified that the video is a better representation of Campos's performance on the field sobriety tests than Meza's report.

Meza also administered the one leg stand test to Campos. Meza testified that when administering the one leg stand, he asks the subject to put his feet together, arms down at his sides, and advises the subject that when he tells the subject to do so, the subject is to raise his leg approximately six inches off the ground, keeping both legs straight and raising the foot parallel to the ground. The subject is instructed to look at his elevated foot and count aloud until he is told to stop. Meza explained that he physically demonstrates the test for the subject while he is giving verbal instructions. After demonstrating, Meza asks the subject whether he understood the instructions and obtains a verbal response. Meza testified that there are four clues in the one leg stand: putting the foot down, using the arms for balance, swaying while balancing, and hopping. According to Meza, Campos exhibited two clues: Campos swayed while balancing and he put his foot down. Meza concluded that Campos was intoxicated and arrested him. Meza testified that after he arrested Campos, Campos refused to provide a blood sample.

The State rested at the conclusion of Meza's testimony. The jury found Campos guilty, and the trial judge assessed punishment at a $1000 fine and ninety days of confinement in the Jefferson County Jail, but suspended imposition of sentence and placed Campos on probation for one year.

ISSUES ONE AND TWO

In issue one, Campos challenges the admission into evidence[1] of the police officer's testimony concerning HGN testing of Campos. In issue two, Campos challenges the legal sufficiency of the evidence without the testimony regarding the HGN testing. Specifically, Campos contends Meza deliberately and in bad faith conducted the HGN test in a location where it could not be captured on video, and that the evidence is therefore unreliable because Campos's counsel could not review the manner in which Meza administered the test. We address issues one and two together.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a

_____

[1]Campos filed a pretrial motion requesting exclusion of testimony regarding the HGN test administration and results, alleging that Officer Meza intentionally administered the test off camera to prevent counsel from determining whether the examination was properly administered; without reliability evidence, the test cannot meet the requirements for admission of expert testimony; and the testimony "is extremely prejudicial and yet has little probative value."

reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The fact finder is the ultimate authority on the credibility of witnesses and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). We give full deference to the fact finder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the fact finder resolved such facts in favor of the verdict and defer to that resolution. *Brooks v. State*, 323 S.W.3d 893, 900 n.13 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also "'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17.

We review a trial court's ruling admitting evidence for abuse of discretion, and we must uphold the trial court's ruling if it falls "within the zone of reasonable disagreement." *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *see also Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court errs when its ruling admitting the evidence "is so clearly wrong as to lie

9

outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

Rule 702 of the Texas Rules of Evidence states that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702. The Texas Court of Criminal Appeals has held that testimony concerning the HGN test is scientific evidence and is therefore admissible under Rule 702 if it meets the requirements set forth in *Kelly v. State*, 824 S.W.2d 568, 573-74 (Tex. Crim. App. 1992). *Emerson v. State*, 880 S.W.2d 759, 764 (Tex. Crim. App. 1994). As discussed above, Campos contends the HGN testing evidence was inadmissible because the HGN test was conducted, intentionally and in bad faith, in a location where it could not be captured on video, thereby violating his due process rights.

The jury heard Meza testify that he is certified in conducting standardized field sobriety tests, including the HGN test, walk and turn test, and the one leg stand test. The jury also heard Meza testify that he is certified as a drug recognition expert. Meza explained in detail the procedure for conducting the HGN test, as well as the types of clues a subject may exhibit during HGN testing, and he

10

testified that he followed the standardized procedures in his HGN testing of Campos. No evidence was introduced to indicate that Meza acted intentionally or in bad faith when deciding to administer the HGN test out of the camera's view.

In support of his argument, Campos cites *State v. Rudd*, 255 S.W.3d 293 (Tex. App.—Waco 2008, pet. ref'd). However, *Rudd* did not hold that the failure to videotape the HGN test bars its admission into evidence. *Id*. at 301-02. Rather, the *Rudd* court merely upheld the trial court's order granting a motion to suppress HGN testimony because the trial court had determined that the officer who administered the HGN test lacked credibility on the issue of how the testing was conducted. *Id*. at 301. Campos cites no authorities holding that the lack of a video recording renders evidence of HGN testing inadmissible, or that lack of a video recording violates his right to due process, and we are aware of none. For all of these reasons, the trial court did not err by admitting testimony regarding the HGN testing into evidence. We overrule issue one.

We turn now to the legal sufficiency of the evidence. The State had the burden to prove that Campos was intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2014). The jury heard evidence that Bearden stopped Campos and three other subjects who appeared to be racing. The jury also heard evidence that Campos had slurred

11

speech, bloodshot eyes, and a strong odor of alcoholic beverage on his breath. The jury heard Meza's testimony that Campos exhibited six out of a possible six clues on the HGN test, four out of eight clues on the walk and turn test, and two out of four clues on the one leg stand test. The jury heard testimony that Campos refused to provide a blood sample and viewed a video of Campos's performance of the walk and turn and one-leg stand tests. As we have previously explained, the trial court did not err by admitting evidence of the HGN testing. Regardless of whether or not the HGN evidence is considered, we conclude that a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13; *Penagraph*, 623 S.W.2d at 343. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on September 25, 2015
Opinion Delivered November 4, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.